GLADYS TORRES GONZÁLEZ, demandante y recurrida, v. DEPARTA-
MENTO DEL TRABAJO Y RECURSOS HUMANOS, ETC., demanda-
dos y peticionarios.

Números: CE-89-536 Resueltos: 8 de febrero de 1991
 CE-89-541

*Rafael Machargo Chardón, Eileen Herrero Lorenzo* y *Néstor Barbosa Vargas*, abogados de los peticionarios; *Mario L. Paniagua*, abogado de la recurrida; *Rafael G. Rocher* y *José Luis González Castañer, amicus curiae.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Bajo la Ley de Beneficios por Incapacidad Temporal (en adelante Ley S.I.N.O.T.),[1] ¿tiene la mujer embarazada que padecer una condición incapacitante para ser acreedora a recibir sus beneficios durante *todo* el período de descanso provisto por la ley para la protección de madres obreras?[2]

I

La Sra. Gladys Torres González, Secretaria, ingresó en el Hospital de Damas de Ponce el 9 de febrero de 1986 y dio a luz al otro día.[3] No se reintegró a sus labores hasta el 11 de marzo de 1986, esto es, veintinueve (29) días después. Reclamó bajo la Ley S.I.N.O.T. La Cooperativa de Seguros de Vida (en adelante C.O.S.VI.) le suministró al médico de la señora Torres González, Dr. Armando J. Collazo Leandry, un documento intitulado "Certificación Médica por Incapacidad bajo la Ley 139 de 1968", para que le aclarase si ella se había ausentado de su empleo por haberse acogido a la licencia de maternidad concedida por la ley para la protección de madres obreras, Ley Núm. 3 de 13 de marzo

---

[1] Ley Núm. 139 de 26 de junio de 1968, según enmendada, 11 L.P.R.A. sec. 201 *et seq.* Esta ley establece el seguro por incapacidad no ocupacional temporera (Ley S.I.N.O.T.).

[2] Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. secs. 467–474.

[3] Los autos no explican por qué trabajó hasta ese día. Surge, no obstante, que ella no reclamó por el período anterior a su alumbramiento.

de 1942, según enmendada, 29 L.P.R.A. secs. 467–474, o si se debía a un padecimiento de alguna condición médico-quirúrgica que le hubiese provocado una "gravidez patológica incapacitante". El doctor Collazo Leandry cumplimentó el documento y marcó el encasillado correspondiente a "Período de Descanso, Ley #3 de 1942". Apéndice, pág. 13. A base de esa certificación, C.o.S.Vi. le negó los beneficios de la Ley S.I.N.O.T. Sin embargo, después reconsideró y le envió un cheque por $118.49 que cubría un período de incapacidad comprendido entre el 9 de febrero y el 22 de febrero de 1986.

Insatisfecha, la señora Torres González objetó. Luego de varias comunicaciones, C.o.S.Vi. le informó que le habían pagado sólo dos (2) semanas después del alumbramiento, pues la Ley Núm. 3, *supra,* "limita (sic) a la trabajadora hasta dos semanas para retornar a su trabajo luego del parto, durante el período de *descanso*". (Énfasis en el original.) Apéndice, pág. 18. Se fundamentó en la certificación negativa del doctor Collazo Leandry de que ella no se hallaba incapacitada, sino disfrutando de su período de descanso por maternidad. Según C.o.S.Vi., pasadas las dos (2) semanas después del parto no tenía derecho a recibir los beneficios prescritos en la Ley Núm. 38 de 28 de junio de 1985, que enmendó la Ley Núm. 139 de 26 de junio de 1968, según enmendada, 11 L.P.R.A. sec. 201 *et seq.*

Inconforme, apeló al Secretario del Trabajo y Recursos Humanos de Puerto Rico (Secretario del Trabajo) y planteó que bajo la Ley S.I.N.O.T. —en virtud de la enmendatoria Ley Núm. 38, *supra*— tenía automáticamente derecho a recibir la compensación por *todo* el tiempo que estuvo fuera de su trabajo. El Secretario del Trabajo dictaminó en su contra. Concluyó que el período de descanso bajo la ley para la protección de madres obreras era "compensable . . . *siempre y cuando la mujer esté inhabilitada para desempeñar sus labores*". Apéndice, pág. 15. En revisión, el Tribunal Superior, Sala de Ponce (Hon. Felipe Ortiz Ortiz, Juez), revocó. Resolvió que "una madre obrera tiene derecho a recibir los beneficios provistos por la Ley Núm. 38 durante su período de descanso por maternidad sin que sea

necesario que padezca de condición incapacitante alguna, bastando meramente con que acredite que en efecto está haciendo uso de dicho descanso". Apéndice, pág. 12.

A solicitud del Secretario del Trabajo y de Co.S.Vi. acordamos revisar. Autorizamos la comparecencia, como *amicus curiae*, de la Asociación de Compañías de Seguro de Puerto Rico (A.C.O.D.E.S.E.).

## II

La Ley S.I.N.O.T. estableció un seguro para cubrir el riesgo por incapacidad no ocupacional y sustituir la pérdida de salarios ante esa eventualidad.[4] Por la estrecha interrelación, la estabilidad del plan público depende de aquellos administrados por el sector privado, y viceversa.

Desde su origen esta pieza legislativa tuvo el propósito de proteger a los obreros "contra la pérdida de salarios en caso de incapacidad que no esté relacionada con el empleo". Se definía "incapacidad" como la *inhabilidad* por lesión o enfermedad para desempeñar los deberes de su empleo". (Énfasis suplido.) 11 L.P.R.A. sec. 202(g). El embarazo no estaba incluido y era

---

[4] El diseño estatutario combina el sector privado y gubernamental. Si bien el programa de beneficios está bajo la administración del Secretario del Trabajo y Recursos Humanos de Puerto Rico (Secretario del Trabajo), éstos pueden ser planes privados. Los beneficios cubren incapacidad temporal según definida en la ley y, además, beneficios por muerte y desmembramiento. La cantidad a recibirse por incapacidad está limitada a un máximo de 26 semanas y la compensación a $113 correspondiente a un salario de $9,000 durante el año básico de un trabajador no agrícola. El estatuto también contiene otras limitaciones, tales como una prohibición en cuanto a la acumulación de beneficios con los concedidos por otra legislación, salvo ciertas excepciones provistas.

Para sufragar el plan público, tanto los patronos como los trabajadores deberán pagar al plan —en concepto de primas a ingresar en el Fondo de Beneficios por Incapacidad— la mitad del uno por ciento (1/2 del 1%) de los salarios pagados y recibidos hasta el máximo de $9,000 de salario anual. Igualmente, los trabajadores asegurados aportarán a un plan privado, siempre que ofrezca los mismos o mejores beneficios que el plan público y no conlleve aportaciones mayores de los empleados. Bajo este enfoque el patrono puede autoasegurarse o establecerlo mediante contrato con una compañía aseguradora. Los planes privados tienen que contribuir a la estabilidad del plan público por vía de computaciones (derramas) y, además, aportar al Fondo de Beneficios por Incapacidad aquella proporción que el Secretario del Trabajo determine por concepto de los beneficios del trabajo pagados a los trabajadores desempleados o de un patrono no asegurado.

considerado una limitación para recibir beneficios. Ninguna mujer era elegible para sus beneficios, excepto durante cualquier período que ocurriera al finalizar el embarazo y sólo después de regresar al trabajo. 11 L.P.R.A. sec. 203(g)(2).

Esta situación subsistió hasta que la Ley Núm. 191 de 26 de julio de 1979 reconoció que el embarazo podía ser incapacitante. Se redefinió el término así:

> "*Incapacidad*" con respecto a un trabajador quien está empleado significa su inhabilidad por lesión, enfermedad o embarazo para desempeñar su trabajo habitual o cualquier otro trabajo. (Énfasis suplido.) 11 L.P.R.A. sec. 202(g).

Aparte de incorporarse el embarazo a la definición de incapacidad, la enmienda también restringió este último concepto. Ahora, la incapacidad debe ser de tal naturaleza que inhabilite para trabajar totalmente, no tan sólo para realizar sus labores usuales. Esto es, el impedimento también deberá ser respecto "cualquier otro trabajo".(5) Véase Informe de la Comisión de Trabajo del Senado sobre el P. del S. 1073, pág. 4.

Aunque el embarazo per se dejó de ser una limitación para recibir los beneficios de la Ley Núm. 139, *supra*, el Art. 2(g)(2) de la Ley Núm. 191 de 26 de julio de 1979 (11 L.P.R.A. sec. 203(g)(2)) dispuso que ninguna mujer sería elegible durante cualquier período de incapacidad causada por o en relación con un aborto, excepto en casos provocados por razones médicas o si surgieren complicaciones como resultado del mismo. Además, la Ley Núm. 191, *supra*, prohibió la duplicidad de beneficios, a saber, cuando una mujer incapacitada por embarazo recibiera *simultáneamente* compensación en virtud de la ley para la protección de madres obreras. En esas circunstancias proveyó:

> No se pagarán beneficios por incapacidad en cualquier período durante el cual una empleada incapacitada debido a su embarazo

---

(5) La Ley Núm. 51 de 1ro de julio de 1988 añadió al Art. 2(g), *in fine*, que el "'[p]eríodo de incapacidad' será el período durante el cual un trabajador está continuamente inhabilitado". 1988 Leyes de Puerto Rico 256, 257.

esté recibiendo beneficios bajo la ley para Proteger a las Madres Obreras (Ley Núm. 3 de 13 de marzo de 1942, según enmendada), excepto que dicho pago sea menor que el beneficio por incapacidad que se le pagaría bajo esta ley, en cuyo caso la empleada tendrá derecho a recibir, en adición, la diferencia resultante en concepto de beneficio por incapacidad. 11 L.P.R.A. sec. 203(i). 1979 Leyes de Puerto Rico 558, 568.

■ Así las cosas, en 1985 la Ley Núm. 38, *supra*, incluyó bajo el tópico *Cantidad de beneficios* un nuevo inciso que dispuso:

Cuando una trabajadora se *incapacite* por embarazo recibirá los beneficios provistos en la cláusula (1), inciso (d) de esta sección. Disponiéndose, sin embargo, que los beneficios por *incapacidad* temporera pagaderos por cualquier período durante el cual la empleada *incapacitada por embarazo* reciba beneficios bajo la Ley para Proteger a las Madres Obreras, secs. 467 a 474 del Título 29, consistirán en la diferencia entre los beneficios pagados bajo dicha ley y el setenta y cinco (75) por ciento de su salario semanal. La suma entre el beneficio pagado por el patrono bajo las disposiciones de la Ley para Proteger a las Madres Obreras y el beneficio pagadero bajo esta cláusula, no podrá ser menor del beneficio semanal que le correspondería a la trabajadora bajo las disposiciones de la cláusula (1) de este inciso. (Énfasis suplido.) 11 L.P.R.A. sec. 203(d)(2).

No obstante esta trayectoria legislativa y lenguaje expreso, el ilustrado tribunal de instancia resolvió que el derecho "a recibir el 25% adicional al cual se refiere la Ley Núm. 38 es independiente a la existencia de condición incapacitante alguna, bastando, para que haya tal derecho, el que la madre obrera se encuentre disfrutando del descanso por maternidad establecido por la Ley Núm. 3". Apéndice, pág. 10. Dicho foro basó su interpretación en la Ley Núm. 3 para la protección de madres obreras, en informes legislativos, en la Ley Núm. 38, *supra*, (6) y en la "letra clara de su Exposición de Motivos":

---

(6) Sentenció:
"Es orientador lo expresado en el informe sometido a la Cámara de Representantes, el día 29 de abril de 1985, por sus Comisiones de Trabajo y Asuntos del Veterano y de Asuntos de la Mujer en relación con el proyecto de ley que se convirtiera en la Ley Núm. 3[8]:

Es un hecho evidente que *durante el descanso por maternidad* la mujer, o en su defecto el esposo, se ven obligados a incurrir en una serie de gastos que agravan su situación económica de forma más aguda que bajo condiciones normales. *Es precisamente durante ese período que el ingreso de las empleadas que laboran en la empresa privada se ve reducido a por lo menos la mitad de lo que reciben bajo condiciones normales.*

El propósito de la presente medida es aliviar un poco más la posición económica de las madres obreras que laboran en la empresa privada proveyendo un beneficio semanal adicional con cargo al Fondo por Incapacidad creado por la Ley Núm. 139 de 26 de junio de 1968, enmendada, de forma tal que se le garantice por lo menos el setenta y cinco (75%) de su salario, sueldo, jornal o compensación, *durante el período de descanso por maternidad a los fines de mitigar en parte los efectos negativos de la pérdida de salarios durante dicho período de descanso, sin adicionar carga económica alguna a los patronos.* (Énfasis suplido.) 1985 Leyes de Puerto Rico 48–49.

---

"Se trata de una medida para beneficiar a las madres obreras que se desempeñan en el sector privado de la economía, garantizándoles vía una enmienda a la Ley de Beneficios por Incapacidad no Ocupacional Temporera (Ley Núm. 139 del 26 de junio de 1968, enmendada) que durante el descanso por maternidad que les provee la Ley para Proteger a las Madres Obreras (Ley Núm. 3 del 13 de marzo de 1942, enmendada), habrán de recibir por lo menos el 75% de su sueldo y no *el 50% como al presente*. . . . Con las enmiendas propuesta[s] por el P. de la C. 434 se le garantizará a la madre obrera el pago de por lo menos un 25% adicional con cargo al Fondo de Beneficios por Incapacidad creado por la Ley Núm. 139.' (Subrayado nuestro.)

"En igual sentido, en el informe rendido el 29 de abril de 1985 por la Comisión del Trabajo del Senado en relación con el sustitutivo al P. del S. 110, equivalente al P. de la C. 434, se expresó que:

"Es un hecho evidente que durante el descanso por maternidad de la obrera, o en su defecto el esposo, se ven obligados a incurrir en gastos extraordinarios que agravan su situación económica. Es precisamente durante ese período que el ingreso de las empleadas que laboran en la empresa privada se ve reducida por lo menos la mitad de lo que reciben bajo condiciones normales. La presente medida está dirigida a aliviar un poco este perjuicio económico.'

"Y sobre el fin específico de la ley se expresó:

"[V]a dirigida a beneficiar a las madres obreras que se desempeñan en el sector privado de la economía, garantizándoles —vía una enmienda a la Ley de Beneficios por Incapacidad no Ocupacional Temporera (Ley Núm. 139 de 26 de junio de 1968, enmendada)— *que durante el descanso por maternidad que les provee la Ley para Proteger a las Madres Obreras (Ley Núm. 3 de 13 de marzo de 1942, enmendada), habrán de recibir por lo menos el 75% de su sueldo y no el 50% como al presente*. . . . Con las enmiendas propuestas por el sustitutivo P. del S. 110, se le garantizará a la madre obrera el pago de por lo menos un 25% adicional con cargo al Fondo de Beneficios por Incapacidad creado por la Ley Núm. 139.' (Subrayado nuestro)."

## III

Erró. Su decisión es contraria al estatuto y a las normas de hermenéutica aplicables.

De entrada una aclaración. No se discute —así lo aceptan las partes y el tribunal— que hasta la aprobación de la Ley Núm. 38, *supra*, la incapacidad de la empleada embarazada era requisito *sine qua non* para poder recibir beneficios. La controversia ante nos, pues, se limita a decidir si dicha ley alteró esa situación. Veamos.

 Si bien en sus inicios la Legislatura apuntaló el período de descanso de ocho (8) semanas de la ley para la protección de madres obreras en "una presunción de incompetencia física *total*", ese enfoque fue variado en la Ley Núm. 20 de 5 agosto de 1975, enmendatoria de la Sec. 6 de la Ley Núm. 3, *supra*, 29 L.P.R.A. sec. 471. Hoy la política pública es considerar que existe incapacidad absoluta (total) para trabajar sólo una (1) semana antes del embarazo y dos (2) semanas después. 29 L.P.R.A. sec. 471. Así se desprende de la Exposición de Motivos de la Ley Núm. 20, *supra*, que en lo pertinente dispuso:

> . . . Habiéndose *establecido ya por las autoridades médicas que cada preñez es un asunto individual se enmienda esta ley* a los efectos de que *sea optativo* para la obrera en estado grávido escoger hasta cuatro semanas de descanso prenatal o sólo la última semana antes del alumbramiento extendiéndose las otras semanas de descanso prenatal a que tiene derecho al descanso *post-partum*, y pudiendo también optar por regresar a su trabajo dos semanas después del parto, *siempre que presente certificación médica acreditativa de que está en condiciones de trabajar hasta una semana antes del parto, o dos semanas después de éste, según sea el caso*. (Énfasis suplido.) 1975 Leyes de Puerto Rico 731–732.

 Esta realidad científica, de la cual se hizo eco la Asamblea Legislativa, sirvió de base para la interpretación del Secretario del Trabajo de 23 de septiembre de 1986. Dicho funcionario se expresó así:

En cuanto al concepto de incapacidad que la Ley establece en su Sección 2(g), debe quedar claro que incapacidad con respecto a un obrero quien está empleado, significa su inhabilidad por lesión, enfermedad o embarazo para desempeñar su trabajo habitual o cualquier otro trabajo. En otras palabras, *debe haber incapacidad para trabajar por cualquier de las antes mencionadas razones.*

Este Departamento interpreta que las *condiciones resultantes de un embarazo y en ocasiones las mismas circunstancias del embarazo, pueden provocar que una mujer se inhabilite para realizar su trabajo habitual* por lo que una certificación médica acreditativa de esos factores será prueba suficiente para cumplir con la Sección 3(k)(2) de esta Ley. (Énfasis suplido.) Apéndice, págs. 63–64.

Coincidimos con esta interpretación. La misma salvaguarda los intereses concernidos y está a tono con el espíritu de esta especial legislación. De las ocho (8) semanas del período de descanso bajo la citada ley para la protección de madres obreras, se aseguran por lo menos tres (3) semanas de ingreso adicional por razón de la prohibición absoluta.

Aparte de lo expuesto, el récord legislativo revela serias preocupaciones de que los beneficios autorizados por la Ley Núm. 38, *supra,* no conllevaran unos aumentos indebidos en los costos operacionales de los patronos. Además, se plasmó una inquietud en cuanto a desestabilizar el Fondo de Beneficios por Incapacidad.(7)

---

(7) De la misma Exposición de Motivos de la Ley Núm. 38 de 28 de junio de 1985 surge que su objetivo fue aumentar los beneficios por incapacidad por razón de embarazo "sin adicionar carga económica alguna a los patronos".

El Informe de la Comisión de Trabajo del Senado sobre el P. del S. 110 de 29 de abril de 1985 consignó:

"El Departamento del Trabajo y Recursos Humanos endosó sin reservas de clase alguna la medida. *No hubo objeción de parte de los círculos patronales ya que no conlleva costos adicionales para los patronos.* Debido a la difícil situación por la que está atravesando la economía, se entendió que el imponer un aumento en los beneficios marginales de los trabajadores con cargo a los patronos empeoraría dicha situación, poniendo en peligro, además, *la estabilidad de los empleos en la empresa privada.* De acuerdo a la evidencia presentada por el Secretario del Trabajo tampoco afectará la *adecuada solvencia económica del Fondo de Beneficios por Incapacidad.*" (Énfasis suplido.)

El Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 434 de 29 de abril de 1985 señaló que con las enmiendas propuestas "se le garantizará a la madre obrera el pago de por lo menos un 25% adicional

 Evidentemente, el verdadero propósito de esta medida fue aliviar la condición económica de las madres obreras que se incapacitaran mientras trabajaban en la empresa privada. Se les proveyó un beneficio semanal adicional, con cargo al Fondo por Incapacidad creado por la Ley Núm. 139, *supra*, que les garantizaba por lo menos el 75% de su salario, sueldo, jornal o compensación.

 Hoy día no existe una presunción de "incapacidad física" *total* durante el período de ocho (8) semanas. Sólo se considera incapacitada para trabajar a una obrera embarazada durante una (1) semana antes y dos (2) después del alumbramiento. El período remanente "es asunto individual" de la mujer según dictamen médico.

 La enmienda introducida en 1985, Ley Núm. 38, *supra*, afectó el método de computar los beneficios pagaderos a la mujer embarazada inhabilitada para trabajar como consecuencia de su embarazo o alumbramiento. Sin embargo, no extendió ni modificó el período durante el cual tiene derecho a recibir tales beneficios. Para ser acreedora a todos los beneficios autorizados en la referida Ley Núm. 38, es necesario acreditar la inhabilidad para trabajar.[8]

En el caso de autos el certificado médico no acreditó que la señora Torres González estuviera inhabilitada para desempeñar su trabajo durante *todo* el período señalado. En consecuencia, no tenía derecho a la total compensación.

*Se dictará sentencia revocatoria.*

El Juez Presidente Señor Pons Núñez se inhibió.

---

con cargo al *Fondo de Beneficios por Incapacidad creado por la Ley Núm. 139*". (Énfasis suplido.)

(8) Esta interpretación hace innecesario que examinemos los interesantes planteamientos constitucionales que tanto el Secretario del Trabajo, la Asociación de Compañías de Seguro de Puerto Rico (A.C.O.D.E.S.E.) como la Cooperativa de Seguros de Vida (Co.S.Vi.) nos hacen. Se fundan en que la Ley S.I.N.O.T. es de *incapacidad*. En consecuencia, en igualdad de condiciones y en contraste con otros obreros a los cuales se les exige incapacidad, se nos aduce que es cuestionable que pueda concederse compensación cuando no existe una condición incapacitante.