MERCEDES IDALIS IZAGAS SANTOS, peticionaria, *v.* FAMILY DRUG CENTER AND CONVENIENCE STORE, INC., h/n/c FARMACIA SARIMAR DRUG, recurrida.

*Número:* CC-2010-144 *Resuelto:* 30 de junio de 2011

466

*Edwin Rivera Cintrón*, abogado de la parte peticionaria; *Erick R. Ronda del Toro*, abogado de la parte recurrida.

LA JUEZA ASOCIADA SEÑORA FIOL MATTA emitió la opinión del Tribunal.

En este caso analizamos el proceso que debe seguirse cuando un empleado acogido a la reserva de empleo establecida por la Ley del Sistema de Beneficios por Incapacidad Temporal, mejor conocida como SINOT, solicita la reinstalación en su puesto. En particular, si un patrono puede exigirle que presente evidencia que acredite su capacidad para reintegrarse al empleo más allá de su recuperación de la enfermedad o el accidente no ocupacional que dio lugar a que se le declarara incapacitado para trabajar en primera instancia.

I

La Sra. Mercedes Izagas Santos comenzó a trabajar en la farmacia Sarimar Drug (Family Drug Center and Convencience Store) el 17 de agosto de 1992 en calidad de farmacéutica licenciada. En 1996, fue ascendida a la posición de farmacéutica regente.[1] En sus catorce años como empleada de la farmacia, nunca fue disciplinada ni amonestada, y su desempeño fue catalogado como bueno. A finales de 2005, la señora Izagas Santos anunció que se sometería a una operación bariátrica porque padecía de obesidad mórbida. Esa operación, incluso, fue recomendada por los codueños de la farmacia, el Sr. José Francois Soto y la Sra. Edna Palou, ambos abogados de profesión y casados entre sí. Para poder someterse a esta operación, la señora Izagas Santos solicitó y obtuvo de su patrono una licencia sin sueldo. La operación se llevó a cabo el 31 de enero de

---

[1] La farmacéutica regente es la farmacéutica principal de la farmacia. Es la encargada de los medicamentos controlados que se venden y lleva los registros. Además, es la responsable ante los organismos del Estado, el DEA y ante el Departamento de Salud, de esos inventarios, supervisa los empleados del recetario, hace las compras, atiende los asuntos de recetas y establece los turnos de los empleados, entre otras tareas. Transcripción de la prueba oral, Apéndice del *certiorari*, págs. 53–54.

2006.([2]) Acto seguido, solicitó y obtuvo los beneficios de la Ley Núm. 139 de 26 de junio de 1968, la Ley de Beneficio por Incapacidad Temporal (SINOT).([3]) Tanto la licencia sin sueldo como la solicitud al amparo de la SINOT tenían como fundamento la incapacidad para trabajar que sufriría la señora Izagas Santos durante su periodo de recuperación producto de la cirugía.

A pesar de que originalmente se había estimado que la recuperación duraría pocos meses, la señora Izagas Santos sufrió complicaciones que alargaron el proceso. A consecuencia de estas complicaciones, la señora Izagas Santos fue atendida por varios especialistas, aunque la coordinación de su condición seguía en manos del cirujano que llevó a cabo la operación original, el Dr. Albert Suárez Domínguez.([4])

El 20 de noviembre de 2006, el doctor Suárez Domínguez le dio un alta total a la querellante, expidiéndole un certificado médico, autorizándola a regresar a su trabajo. No hizo determinación alguna de incapacidad, ni total ni parcial.([5]) El 28 de noviembre, la señora Izagas Santos le entregó esta certificación médica al señor Soto. Éste no la aceptó y le pidió que se la entregara cuando tuviese las certificaciones médicas de los demás especialistas que la atendían que demostraran su capacidad para retornar. Además, le informó que interesaba reservarse el derecho de que un médico de su elección la evaluara. Posteriormente se cerró toda comunicación entre la demandante y

---

([2]) El último día que trabajó la señora Izagas Santos antes de someterse a la operación fue el 27 de enero de 2006.

([3]) 11 L.P.R.A. sec. 201 *et seq.* Las siglas se refieren al Seguro por Incapacidad No Ocupacional Temporal establecido por esta ley.

([4]) Como parte del tratamiento posoperacional y de las complicaciones posteriores, la señora Izagas Santos consumía distintos medicamentos y recibía una variedad de tratamientos. Producto de la lentitud de la recuperación, de que tenía que permanecer en descanso y de que aún no regresaba a su trabajo, la señora Izagas Santos sufrió un periodo de depresión. Ahora bien, en ningún momento se estableció que esa depresión la incapacitara para trabajar.

([5]) Determinación de Hecho Núm. 12 del Tribunal de Primera Instancia. Apéndice, pág. 205.

los demandados. El 8 de enero de 2007, la señora Izagas Santos comenzó a trabajar para otra farmacia.

El 10 de enero de 2007, la señora Izagas Santos presentó una demanda por despido injustificado y en violación a SINOT. En ésta, alegó que una carta enviada por la copropietaria de la farmacia, el 26 de octubre de 2006, en donde se le indicaba que ya no era empleada de la farmacia, constituyó un despido y que ese despido se hizo sin que mediara justa causa y en violación a la reserva de un año que dispone SINOT, periodo que terminaba en febrero de 2007. La demanda se presentó y tramitó al amparo del procedimiento sumario laboral dispuesto por la Ley Núm. 2 de 17 de octubre de 1961.([6]) En su alegación responsiva, el patrono alegó como defensa afirmativa que la querellante nunca fue despedida, y que, por el contrario, ésta no se reportó a trabajar tras haber sido dada de alta, como dispone SINOT. Además, alegó que la querellante incumplió con los requisitos para reclamar la protección de reinstalación que dispone esa ley.

Tras la celebración del juicio y el desfile de la prueba, el Tribunal de Primera Instancia declaró "con lugar" la demanda.([7]) La sala de instancia determinó que la carta de 26 de octubre de 2006 suscrita por la copropietaria de la farmacia, la señora Palou, fue, en efecto, una carta de despido.([8])

La parte demandada recurrió al Tribunal de Apelaciones. En síntesis, alegó que: (1) no hubo despido, (2) la querellante incumplió con los requisitos de reinstalación que dispone SINOT y (3) se debieron admitir como evidencia los expedientes de los medicamentos despachados a la

---

([6]) 32 L.P.R.A. sec. 3118 *et seq.*

([7]) Como remedio, el Tribunal de Primera Instancia ordenó el pago de $33,480 por la mesada y $8,370 de honorarios de abogado. No se dieron remedios según la Ley de Beneficio por Incapacidad Temporal (SINOT).

([8]) Determinación de Hecho Núm. 11 del Tribunal de Primera Instancia. Apéndice, pág. 205.

señora Izagas hasta noviembre de 2006.([9]) El Tribunal de Apelaciones revocó, con un disenso, la Sentencia del Tribunal de Primera Instancia.([10])

Sobre el primer señalamiento de error, es decir, que la carta de 26 de octubre constituyó un despido, el foro intermedio revocó la determinación de la sala de instancia. Según el Tribunal de Apelaciones, a la luz de la totalidad de las circunstancias, en particular el hecho de que la peticionaria y el patrono continuaron en comunicación para canalizar el reintegro a sus labores, esa carta no podría verse como un despido.

Sobre el segundo señalamiento de error, la mayoría del panel del Tribunal de Apelaciones determinó que la señora Izagas Santos *"no había cumplido con proveer las certificaciones médicas que acreditaran su recuperación"* y, por eso, "no cumplió con los requisitos establecidos mediante la Ley SINOT para poder reintegrarse a sus funciones". (Énfasis suplido.)([11]) El foro apelativo concluyó que "esta sola certificación del cirujano dadas las circunstancias de autos, no cumple con el requisito de la Ley 139, *supra*, para establecer que el trabajador est[á] mental y físicamente capacitado para ocupar el empleo".([12]) Entendió, por el contrario,

---

([9]) Sobre este tercer punto, el Tribunal de Primera Instancia rehusó admitir los expedientes, porque eran impertinentes a la controversia, dado que la reserva de SINOT aún no había expirado a octubre de 2006 y *que la querellante nunca fue declarada incapacitada por razones mentales o emocionales*. Además, porque era prueba acumulativa, *ya que durante el juicio, a pesar de que en la alegación responsiva nunca se hizo tal defensa afirmativa de incapacidad, se presentó prueba sobre la depresión de la demandante y que tomaba medicamentos para ese padecimiento.*

([10]) El juez Piñero González emitió un voto disidente.

([11]) Apéndice del *certiorari*, págs. 281 y 286.

([12]) Apéndice del *certiorari*, pág. 287. El foro apelativo equiparó "seguir bajo tratamiento" a no recibir un "alta" médica. Además, concluyó que, a pesar de que la única declaración de incapacidad establecida fue como consecuencia de la operación bariátrica, al estar recibiendo la señora Izagas Santos tratamiento de otros médicos, éstos también tenían que certificar que se había recuperado para regresar a sus labores. Incluso, el Tribunal de Apelaciones concluyó que "[l]a prueba presentada demuestra que al momento en que se gestionaba el regreso de la señora Izagas a su empleo, ésta no había acreditado estar mental y físicamente capacitada para ocupar su puesto. Al no suplir el certificado del psiquiatra, *incumplió con este requisito de ley*". (Énfasis suplido.) Apéndice del *certiorari*, pág. 289.

que la señora Izagas Santos "no había demostrado que había sido *dada de alta de todas sus condiciones y que estaba capacitada para ocupar su plaza*". (Énfasis suplido.)[13] Es decir, dado que la carta de 26 de octubre no era un despido y que, pasado el periodo de reserva de un año provisto por SINOT, la querellante, según la apreciación del tribunal intermedio, "no ejerció adecuadamente su derecho a ser reinstalada en su puesto",[14] la reserva de SINOT expiró.

Sobre el tercer señalamiento de error, el Tribunal de Apelaciones concluyó que los expedientes de los despachos de medicamentos a favor de la señora Izagas Santos en noviembre de 2006 relacionados con su padecimiento de depresión eran "relevantes para demostrar que a la fecha en que gestionaba la reinstalación en su empleo, no estaba capacitada para ello".[15] Además, determinó que esta prueba no admitida tenía una probabilidad de influencia sustancial en el resultado del pleito.

Inconforme con la determinación del Tribunal de Apelaciones, la señora Izagas Santos recurrió ante este Tribunal. Alega que el tribunal apelativo descartó injustificadamente la apreciación de la prueba y las determinaciones de hechos del Tribunal de Primera Instancia, ya que esas determinaciones tienen apoyo en la prueba presentada. En particular, la peticionaria argumenta que, si se interpreta la carta de 26 de octubre a la luz de los testimonios vertidos en el juicio y la adjudicación de credibilidad que hizo el foro de instancia, se debe concluir que la despidieron a través de esa carta. Alternativamente, plantea que, aunque se entienda que el texto de la carta admite dos posibles interpretaciones razonables distintas, como ésta debe interpretarse a la luz de los testimonios vertidos en el juicio, debe prevalecer la interpretación del foro primario.

En segundo lugar, la peticionaria aduce que, al no ale-

---

[13] Íd., pág. 289.

[14] Íd.

[15] Íd., pág. 291.

gar en su contestación a la querella que ella no estaba capacitada para trabajar, como exige la citada Ley Núm. 2, el patrono renunció a esa defensa afirmativa, por lo cual esa capacidad no está en controversia. En la alternativa, la peticionaria alega que, si se entendiera que su capacidad para regresar a trabajar es un asunto en controversia, a pesar de que cuando fue despedida aún no había expirado la reserva dispuesta por SINOT, la indagación se tendría que circunscribir a la incapacidad sobrevenida como consecuencia de la operación bariátrica y no extenderse a otros padecimientos que nunca provocaron que se le declarara incapacitada para trabajar. Por último, la peticionaria cuestionó la determinación del Tribunal de Apelaciones a los efectos de que no se debían excluir los documentos relativos al historial de medicamentos relacionados con su condición de depresión. El 6 de agosto de 2010, expedimos el auto de *certiorari*.([16])

---

([16]) Hemos expresado de forma reiterada que un tribunal apelativo no debe intervenir con las determinaciones de hechos de los tribunales de instancia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 D.P.R. 345, 356 (2009). Esta norma aplica particularmente a las determinaciones de hechos que hacen los Tribunales de Primera Instancia fundamentadas en testimonio oral. Lo anterior se debe a la oportunidad que tiene el juzgador de observar el comportamiento del testigo mientras ofrece su testimonio, lo cual constituye un factor fundamental para la adjudicación de credibilidad. *Ramírez Ferrer v. Conagra Foods PR*, 175 D.P.R. 799, 810 (2009).

Sin embargo, esta doctrina de deferencia judicial no es absoluta, sino que cede ante las posibles injusticias que puedan acarrear determinaciones de hechos que no estén sustentadas en la prueba desfilada ante el foro primario. *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra. Es decir, los tribunales apelativos, por vía de excepción, pueden descartar esas determinaciones cuando estas no sean razonablemente representativas de la prueba que desfiló ante el foro primario. *Méndez v. Morales*, 142 D.P.R. 26, 36 (1996). Asimismo, esta norma de deferencia judicial no aplica a la evaluación de la prueba documental o pericial debido a que, en estos casos, los tribunales apelativos están en las mismas condiciones que el tribunal de instancia para llevar a cabo una evaluación adecuada de la prueba y llegar a sus propias conclusiones. *Ríos Ruiz v. Mark*, 119 D.P.R. 816 (1987).

En el caso de epígrafe, el Tribunal de Primera Instancia resolvió que la carta de 26 de octubre de 2006 constituyó un despido. Surge de la sentencia que esa determinación estuvo basada en el texto de la carta y no en los testimonios orales vertidos por los testigos ante el foro primario. Así queda evidenciado al disponer que: "Con fecha del 26 de octubre de 2006 ... suscribe una carta a la querellante en la que se hace una serie de imputaciones sobre su visita a la farmacia ... y la despide de su trabajo". Apéndice del *certiorari*, pág. 205. Las demás conclusiones del foro de ins-

## II

El Tribunal de Apelaciones concluyó que la solicitud de reinstalación que hizo la peticionaria a su patrono debía incluir certificaciones médicas de todos los especialistas que la atendieron y no únicamente del médico que la atendió en relación con la condición por la que se le incapacitó según SINOT.

La Sección 16 del Artículo II de nuestra Constitución reconoce, entre otros, el derecho de todo trabajador a la "protección contra riesgos para su salud o integridad personal en su trabajo o empleo".([17]) Como parte del cauce estatutario de ese mandato constitucional, la Asamblea Legislativa ha aprobado varias leyes especiales dirigidas específicamente a proteger a los trabajadores que, por accidente o enfermedad, ya sea ocupacional o no ocupacional, se inhabilitan temporeramente para trabajar.([18]) La Ley Núm. 45 de 18 de abril de 1935, según enmendada, mejor conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, atiende situaciones de enfermedad o accidentes ocupacionales que inhabilitan a un trabajador

---

tancia respecto a los testimonios mencionados son independientes a su determinación sobre si la carta constituyó un despido, adjudicación con base en el documento.

Por su parte, el Tribunal de Apelaciones, al resolver que la carta de 26 de octubre no constituía un despido, se basó en el texto de la carta en unión a hechos incontrovertidos, entre éstos, que el señor François Soto, copropietario de la farmacia, continuó reuniéndose con la querellante para planificar la reintegración de esta última a su empleo. Al tratarse de prueba documental y hechos que no están en controversia, el foro intermedio se encontraba en igual posición que el Tribunal de Primera Instancia para evaluarlos y llegar a sus propias conclusiones. En ese tenor, acogemos la determinación del Tribunal de Apelaciones en cuanto a que la carta de 26 de octubre de 2006 no constituyó un despido a la luz de la continuación de las comunicaciones entre las partes para gestionar la reinstalación de la señora Izagas Santos. En vista de ello, limitaremos nuestra discusión al segundo y tercer señalamiento de error.

([17]) Art II., Sec. 16, Const. P.R., L.P.R.A., Tomo 1, ed. 2008, pág. 369.

([18]) *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 374 (1999); *Cuevas v. Ethicon Div. J & J Prof. Co.*, 148 D.P.R. 839, 845 (1999); *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024, 1029 (1994); R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, ed. rev., San Juan, [sin Ed.], 2005, pág. 187.

a continuar realizando sus labores.[19] Para situaciones de enfermedades o accidentes no ocupacionales, se aprobó la Ley Núm. 139 de 26 de junio de 1968, según enmendada.[20] Como adelantáramos, si bien estas leyes cubren supuestos distintos, según la naturaleza del accidente o la enfermedad, tienen un mismo propósito y hay una notable uniformidad entre ellas, no solo en su lenguaje y estructura estatutaria, sino en su desarrollo interpretativo.[21] Como consecuencia, tanto la Asamblea Legislativa como este Tribunal hemos recurrido a una para analizar e interpretar la otra.[22]

En cuanto a la reserva de empleo y la obligación de reinstalación, SINOT dispone:

> … En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este capítulo, *el patrono vendrá obligado a reservar el empleo* que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
>
> (1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fue dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos un (1) año desde la fecha de comienzo de la incapacidad;
>
> (2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicita del patrono dicha reposición, y
>
> (3) que dicho empleo subsista …. (Énfasis suplido.)[23]

---

[19] Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*).

[20] Ley Núm. 139 de 26 de junio de 1968 (11 L.P.R.A. sec. 201 *et seq.*).

[21] Véase Delgado Zayas, *op. cit.*, pág. 193. Por un tiempo, la única diferencia entre los estatutos era la duración del periodo de reserva cuando la Ley Núm. 45, *supra*, proveía para doce meses mientras que SINOT únicamente otorgaba seis meses. No obstante, precisamente como parte del proceso de uniformización entre ambas leyes, ahora SINOT también provee para una reserva de empleo de doce meses.

[22] Para efectos de la figura de la reserva de empleo y del significado de incapacidad que ofrece SINOT, por su semejanza virtualmente idéntica con la Ley Núm. 45, *supra*, y nuestro historial de interpretación uniforme, haremos referencia tanto a casos directamente relacionados con SINOT como a la jurisprudencia interpretativa de la ley.

[23] 11 L.P.R.A. sec. 203(q).

Como puede observarse, la ley brinda dos tipos de protección al obrero. Primero, le impone al patrono el deber de reservarle al trabajador, por doce meses, el empleo en el que se desempeñaba al momento de ocurrir el accidente. Segundo, el trabajador tiene derecho a que lo repongan en ese mismo empleo una vez es dado de alta, si se lo solicita al patrono y si cumple con los requisitos establecidos. El remedio de reinstalación constituye una excepción por consideraciones de política pública al remedio exclusivo de la mesada provisto por la Ley Núm. 80 de 30 de mayo de 1976, en los casos de despido injustificado.[24] Las obligaciones que tiene el patrono según SINOT *son independientes la una de la otra.*[25] En caso de que viole el periodo de reserva o no reinstale al empleado que cumple con los requisitos establecidos en la ley tras haber sido requerido por éste, el patrono le responderá por daños y perjuicios.

■ De la única manera en que un patrono puede despedir a un empleado durante el periodo de reserva es si media justa causa.[26] Por otra parte, si el patrono lo despide sin justa causa antes de que venza el periodo de reserva, el empleado no tendrá que solicitar su reinstalación al finalizar el periodo de reserva para poder instar su acción de daños contra el patrono por haber violado la reserva.[27] Hemos resuelto que esta reserva existe "con total independencia de si en el futuro el obrero cualifica para ser reinstalado, e impide que el obrero sea despedido".[28]

---

[24] 29 L.P.R.A. secs. 185a–185m. Véanse: *Rivera v. Ins. Wire Prods., Corp.*, 158 D.P.R. 110, 117 (2002); *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178, 192 (1998); *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500, 512–513 y 515 (1994).

[25] *García v. Darex P.R., Inc.*, supra, pág. 376. Este caso es en referencia a la Ley Núm. 45, supra. A similar conclusión hemos llegado en cuanto a SINOT. Véase *Meléndez v. Asoc. Hosp. del Maestro*, 156 D.P.R. 828 (2002).

[26] *Meléndez v. Asoc. Hosp. del Maestro*, supra, pág. 857.

[27] *Rivera v. Ins. Wire Prods., Corp.*, supra, pág. 127; *Meléndez v. Asoc. Hosp. del Maestro*, supra, pág. 858 esc. 13.

[28] *García v. Darex P.R., Inc.*, supra, pág. 378.

Por eso, mientras la reserva esté vigente, no se puede despedir al empleado, aunque el empleado no cumpla con los requisitos establecidos en la ley para pedir la reinstalación.[29] En otras palabras, no será justificación para despedir a un empleado durante el periodo de reserva el que éste no haya cumplido o que se prevea que no podrá cumplir con los requisitos de la reinstalación. De ser este el caso, el patrono tendrá que esperar a que se extinga el período de reserva, salvo que exista justa causa para el despido según la Ley Núm. 80.

■ El objetivo de la reserva de empleo al amparo de SINOT es "garantizar al obrero que se incapacita temporalmente debido a una enfermedad o accidente no ocupacional, no sólo tranquilidad de espíritu y el sustento de él y de su familia por un tiempo determinado, sino el derecho a ser reinstalado".[30] Aunque el trabajador esté inhabilitado para realizar sus funciones, *la relación obrero-patronal sigue intacta mientras dure el periodo de reserva.*[31] Esta reserva de doce meses comienza a transcurrir a partir del momento en que el obrero se inhabilita para trabajar[32] y se trata de un plazo de caducidad.[33] Además, como esta-

---

[29] *Rivera v. Ins. Wire Prods., Corp.*, supra, pág. 124.

[30] *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 53 (1984). Véase, además, Delgado Zayas, *op. cit.*, pág. 193: "[F]ue la intención del legislador que la protección que recibiera el trabajador mediante legislación no fuera meramente económica. Lo que pretendió proteger fue esencialmente la tenencia del empleo." (Énfasis suprimido.)

[31] *Rivera v. Ins. Wire Prods., Corp.*, supra, pág. 126, citando a *Santos et al. v. Lederle*, 153 D.P.R. 812 (2001) y *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763 (1992). Estos casos se refieren a la reserva de empleo provista por la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra.* Esta ley atiende accidentes y enfermedades ocupacionales, mientras que SINOT atiende casos no ocupacionales. No obstante, consistentemente hemos interpretado esos estatutos de manera integral y uniforme. Incluso, sobre el asunto específico de la vigencia de la relación obrero-patronal mientras esté activa una reserva de empleo, en *Rivera v. Ins. Wire Prods., Corp.*, supra, pág. 126 esc. 7, por voz del Juez Asociado Baltasar Corrada del Río, enfatizamos la relación íntima entre ambos regímenes estatutarios.

[32] *Alvira v. SK & F Laboratories Co.*, 142 D.P.R. 803, 819 (1997), opinión concurrente del Juez Asociado Corrada del Río.

[33] Íd.

tuto reparador, estamos obligados a interpretarlo liberal-mente a favor del trabajador.[34]

Para disfrutar de los beneficios de la reserva de empleo y derecho a reinstalación que provee SINOT, hace falta que el trabajador quede incapacitado por una enfermedad o accidente no ocupacional. En cuanto a qué significa "incapacidad" para efectos de esta ley, el propio estatuto nos ofrece una definición:

> Con respecto a un trabajador quien está empleado significa su *inhabilidad* por lesión, enfermedad o embarazo *para desempeñar su trabajo habitual o cualquier otro trabajo.* ... Período de incapacidad será el período durante el cual [el empleado] está *continuamente inhabilitado.* (Énfasis suplido.)[35]

Podemos colegir de lo anterior que el elemento central de la definición de incapacidad es la inhabilidad del empleado, no meramente de llevar a cabo las funciones de su puesto en particular, sino de "cualquier otro trabajo". Incluso, hemos resuelto que esta "incapacidad debe ser de *tal naturaleza* que [le] inhabilite para trabajar *totalmente,* no tan sólo para realizar sus labores usuales". (Énfasis suplido.)[36] No todo padecimiento conlleva que el empleado esté incapacitado como para recibir los beneficios de SINOT. Por eso, la certificación de recuperación y recapacitación se referirá solamente a la incapacidad que originalmente permitió al empleado disfrutar de los beneficios de SINOT. Nada hay en la ley que le requiera al empleado presentar una certificación relacionada con padecimientos que nunca le inhabilitaron para trabajar en primer lugar. Mucho menos faculta al patrono para exigir pruebas o certificaciones adicionales.[37]

---

[34] *Rojas v. Méndez & Co., Inc.,* supra, pág. 53.

[35] 11 L.P.R.A. sec. 202(g).

[36] *Torres González v. Depto. del Trabajo,* 127 D.P.R. 931, 937 (1991).

[37] Esto no priva al patrono de poder despedir al empleado, *después de reinstalarlo,* si tiene justa causa para ello, por ejemplo, que no haga su trabajo eficiente-

Evidentemente, un obrero acogido a SINOT no deja de ser empleado de su patrono. Por el contrario, tanto la reserva como el derecho de reinstalación parten de la premisa de la continuación de la relación obrero-patronal. Hemos sido enfáticos en que "la reserva de empleo supone la continuación y existencia de la relación obrero-patronal, al menos durante [el periodo de la reserva]".[38] En el caso de autos, el patrono se negó a reinstalar a la señora Izagas Santos a su puesto, a pesar de que esta presentó posteriormente, en el periodo de reserva, una certificación médica *del doctor que condujo la operación que la había inhabilitado para trabajar*, y a pesar de que la peticionaria nunca fue declarada como incapacitada para trabajar por los demás padecimientos que tenía. Al así actuar, violó la ley.

## III

Las reclamaciones hechas al amparo de la Ley Núm. 80, pueden tramitarse a través de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada,[39] que establece un procedimiento sumario para la rápida consideración y adjudicación de las querellas de obreros y empleados contra sus patronos relacionadas a salarios, beneficios y otros derechos laborales.[40] Desprovista de esta alternativa, una reclamación mediante la Ley Núm. 80 sería un procedimiento ordinario más, lo cual, según hemos dicho, es "incompatible con alcanzar, en su máxima expresión, el mandato legislativo de diligencia en el dictamen judicial".[41] El deber de este Tribunal de velar por que los procedimientos judiciales se lleven a cabo con la mayor rapidez posible

---

mente como dispone el Artículo 2(b) de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185b(b).

[38] *Rivera v. Ins. Wire Prods., Corp.*, supra, pág. 126.

[39] 32 L.P.R.A. sec. 3118 *et seq.*

[40] Véanse: *Vizcarrondo Morales v. WVM, Inc.*, 174 D.P.R. 921 (2008); *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 D.P.R. 483, 492 (1999).

[41] *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 492.

cobra singular importancia al enfrentarnos a una situación en la que los otros poderes constitucionales —Legislativo y Ejecutivo— en el ejercicio válido de aprobar leyes, han expresado su sentir sobre los asuntos que a su juicio merecen especial atención.[42] Las reclamaciones presentadas, según lo dispuesto por la Ley Núm. 2, "por su naturaleza y finalidad, ameritan ser resueltas a la brevedad posible 'para así lograr los propósitos legislativos de proteger el empleo, desalentar los despidos injustificados y proveerle al obrero despedido medios económicos para su subsistencia mientras consigue un nuevo empleo' ".[43] Por consiguiente, este estatuto también debe interpretarse liberalmente a favor del empleado.[44] Acorde a ello, corresponde a los tribunales darle cumplimiento estricto a los procedimientos establecidos por la Ley Núm. 2,[45] sin que se entienda, no obstante, que haya sido la intención del legislador imponer un trámite procesal inflexible e injusto para el patrono querellado.[46]

Cuando se presenta una causa de acción al palio de la Ley Núm. 2, el patrono querellado deberá hacer *una sola* alegación responsiva en la cual deberá incluir *todas* sus defensas y objeciones, entendiéndose que *renuncia a todas las defensas y objeciones que no incluya en esa alegación responsiva*.[47] La Ley Núm. 2 también dispone que las Reglas de Procedimiento Civil se aplicarán "en todo aquello que no esté en conflicto con las disposiciones específicas

---

[42] *Srio. del Trabajo v. J.C. Penney Co., Inc.*, 119 D.P.R. 660, 665 (1987).

[43] *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 928.

[44] Íd., pág. 928.

[45] *Dávila Rivera v. Antilles Shipping, Inc.*, supra, pág. 492; *Mercado Cintrón v. Zeta Com., Inc.*, 135 D.P.R. 737, 742 (1994).

[46] *Aguayo Pomales v. R & G Mort.*, 169 D.P.R. 36, 44 (2006).

[47] 32 L.P.R.A. sec. 3120. Esto es cónsono con lo dispuesto por la Ley Núm. 80 en su Artículo 8(a): "En toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a a 185m de este título, el patrono *vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado.*" (Énfasis suplido.)

de las mismas o con el carácter sumario".(⁴⁸) Es decir, se recurrirá a las Reglas de Procedimiento Civil cuando éstas no contradigan lo dispuesto por la Ley Núm. 2 o choquen con su naturaleza sumaria.(⁴⁹) En cuanto a la posibilidad de enmendar las alegaciones responsivas para incluir defensas afirmativas no mencionadas originalmente, hemos resuelto, enfáticamente, que "los tribunales de instancia *no* deben permitir que una parte querellada enmiende su contestación a la querella para adicionar nuevas defensas afirmativas".(⁵⁰) En cumplimiento con las disposiciones explicadas, no recurriremos a las Reglas de Procedimiento Civil cuando el asunto bajo consideración está atendido de manera expresa y precisa por la Ley Núm. 2. Solamente podemos ser más flexibles cuando medien circunstancias verdaderamente excepcionales.(⁵¹)

En el caso de autos, la parte querellada se limitó a negar el despido en su alegación responsiva. No ofreció ninguna de las justificaciones enumeradas en la Ley Núm. 80, *supra*. Tampoco alegó que la querellante sufría de alguna incapacidad adicional a aquella que era producto de la operación bariátrica. En consecuencia, renunció a toda defensa afirmativa adicional.

## IV

Ante el Tribunal de Apelaciones, la parte querellada señaló que el foro de instancia incidió al no admitir evidencia sobre el despacho de medicamentos antidepresivos a la querellante en noviembre de 2006. El foro apelativo le dio la razón y la peticionaria aduce que se equivocó. Debemos,

---

(⁴⁸) 32 L.P.R.A. sec. 3120.

(⁴⁹) *Aguayo Pomales v. R & G Mortg.*, supra, pág. 51.

(⁵⁰) *Srio. del Trabajo v. J.C. Penney Co,. Inc.*, supra, pág. 669. Véase, además, *Vizcarrondo Morales v. MVM, Inc.*, supra, pág. 931; *Rodríguez et al. v. Rivera et al.*, 155 D.P.R. 838, 857 (2001).

(⁵¹) *Mercado Cintrón v. Zeta Com., Inc.*, supra, pág. 742.

por lo tanto, examinar nuestra normativa evidenciaria para llegar a una conclusión.

La evidencia pertinente es aquella que tiende a aumentar o disminuir la probabilidad de la existencia de un hecho que tiene consecuencias para la adjudicación de la acción. Esto incluye la evidencia que sirva para impugnar o sostener la credibilidad de una persona testigo o declarante.[52] La evidencia pertinente es admisible excepto cuando se disponga lo contrario por imperativo constitucional, por disposición de ley o por las Reglas de Evidencia.[53] La materialidad y el valor probatorio, como nos explica el profesor Chiesa Aponte, son elementos fundamentales en la determinación de pertinencia y admisibilidad,[54] y "se refiere a la relación [de la prueba ofrecida] con los hechos y cuestiones de derecho en controversia".[55] Por lo tanto, la pertinencia está vinculada, condicionada y sujeta al "derecho sustantivo aplicable al caso".[56] La evidencia que no cumpla con cualquiera de estos dos elementos no es pertinente y no será admisible en los tribunales.[57]

Ahora bien, la pertinencia es una condición necesaria, pero no suficiente, para la admisión de cualquier medio de prueba.[58] Por ello, la Regla 403 de Evidencia permite la exclusión de prueba pertinente "cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores: (a) [r]iesgo de causar perjuicio indebido[,] (b) [r]iesgo de causar confusión[,] (c) [r]iesgo de

---

[52] Regla 401 de Evidencia, 32 L.P.R.A. Ap. VI.

[53] Regla 402 de Evidencia, 32 L.P.R.A. Ap. VI.

[54] E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, San Juan, Pubs. J.T.S, 1998, T. I, pág. 22.

[55] Íd.

[56] E.L. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico de 2009*, San Juan, Pubs. J.T.S., 2009, pág. 114.

[57] Véase *Pueblo v. Ortiz Pérez*, 123 D.P.R. 216, 228 (1989).

[58] Chiesa Aponte, *Tratado, op. cit.*, pág. 1.

causar desorientación del jurado[,] (d) [d]ilación indebida de los procedimientos y (e) [i]nnecesaria *presentación de prueba acumulativa*". (Énfasis suplido.)[59] La exclusión de prueba pertinente, según lo dispuesto por esta regla, descansa en la sana discreción del tribunal.[60] La exclusión por conllevar la innecesaria presentación de prueba acumulativa tiene como objetivo la economía procesal.[61]

Evidentemente, los tribunales se pueden equivocar al admitir prueba que no era admisible o excluir prueba que sí lo era. En el segundo caso, la Regla 104(B) de Evidencia dispone que le corresponde a la parte perjudicada "invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba".[62] Las Reglas de Evidencia también atienden las consecuencias en caso de que se cometa un error en la admisión o exclusión de evidencia. La Regla 105 de Evidencia dispone, en lo pertinente, como sigue:

(a) *Regla General*
No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:
 (1) [l]a parte perjudicada con la admisión o exclusión de evidencia hubiera satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 de este apéndice, y
 (2) [e]l tribunal que considera el señalamiento estime que la evidencia admitida o excluida *fue un factor decisivo o sustancial* en la sentencia emitida o decisión cuya revocación se solicita. (Énfasis suplido.)[63]

Para determinar si la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida, hay que llevar a cabo "un cálculo algo especula-

---

[59] 32 L.P.R.A. Ap. VI.

[60] Chiesa Aponte, *Reglas, op. cit.*, pág. 116.

[61] Íd., pág. 119.

[62] 32 L.P.R.A. Ap. VI.

[63] Íd.

tivo, en términos de cuál es la *probabilidad* de que, *de no haberse cometido el error*, el resultado hubiera sido distinto". (Énfasis suplido.)([64]) De no ser así, se entenderá que fue un error benigno (*harmless error*) y no conllevará la revocación de la determinación.

Hemos visto que SINOT provee para una reserva de empleo solamente por doce meses, independientemente de que el empleado se haya recuperado física y emocionalmente. Lo que es más, como cuestión de derecho sustantivo, para efectos del proceso de reinstalación mediante SINOT, tan solo será pertinente evidencia relacionada a la condición por la que se declaró al empleado incapacitado para trabajar en primera instancia. Siendo ello así, cualquier prueba que se refiera a su estado físico o emocional que no esté relacionada con la enfermedad por la cual se le incapacitó es *impertinente*. Además, como también hemos visto, el patrono renunció a toda defensa afirmativa que no incluyó en su contestación a la demanda, tal y como disponen tanto la Ley Núm. 80 como la Ley Núm. 2. Por esto, renunció a su derecho a presentar prueba sobre el asunto. De igual forma, *durante el juicio se desfiló prueba sobre el hecho de que la querellante, en efecto, había tomado medicamentos antidepresivos durante su recuperación.*([65]) Es decir, ya el foro primario había recibido prueba sobre el estado emocional de la querellante y los medicamentos que ingería para esto. El tribunal de instancia resolvió, en su sana discreción, que la evidencia sobre el despacho de medicamentos era *acumulativa* y era innecesario ver prueba sobre los despachos de medicamentos en noviembre de 2006. No erró.([66])

---

([64]) Chiesa Aponte, *Reglas, op. cit.*, pág. 88.

([65]) Esto, a pesar de que nunca se estableció que esa condición la inhabilitara para trabajar como exige SINOT.

([66]) Incluso en el supuesto de que se entienda que la prueba era pertinente y que no era acumulativa, no estamos ni remotamente ante un error sustancial que, de no haberse cometido, hubiese cambiado el resultado.

V

Por los fundamentos expuestos, resolvemos que el patrono incumplió con su obligación al amparo de SINOT de reinstalar a la señora Izagas Santos una vez ésta le entregó la certificación médica que acreditaba su recuperación, emitida por el doctor que atendió su enfermedad no ocupacional. Por lo tanto, confirmamos la sentencia del Tribunal de Apelaciones en cuanto a que la carta de 26 de octubre no constituyó un despido y revocamos respecto a la desestimación de la reclamación bajo SINOT. Se devuelve el caso al Tribunal de Primera Instancia para que otorgue el remedio procedente según SINOT, de acuerdo con lo establecido en esta opinión.[67]

*Se dictará sentencia de conformidad.*

---

[67] En este caso, la señora Izagas Santos reclamó los salarios dejados de percibir y una compensación por los daños y perjuicios sufridos. No solicitó la reinstalación en el empleo. Por lo tanto, lo que corresponde es calcular los salarios que la empleada hubiera devengado entre el momento en que debió haber sido reinstalada y cuando inició su nuevo empleo y, de haberse probado, una compensación por los daños sufridos.