Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| ELIZABETH RIVERA LUNA<br>Apelante<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC. (HOSPITAL MENONITA) y COMPAÑÍA ASEGURADORA XYZ<br>Apelada | KLAN202301062 | Apelación procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>*Caso Núm.* AI2021CV00375<br><br>Sobre: Despido Injustificado; Discrimen por razón de edad; Derecho Reserva de Empleo; Represalias en el empleo; Procedimiento Sumario |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Aldebol Mora

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece Elizabeth Rivera Luna (señora Rivera Luna o la apelante), mediante recurso de *apelación*, solicitando que revoquemos la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito (TPI), el 24 de octubre de 2023.[1] Mediante su dictamen, el TPI declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por *Mennonite General Hospital* (Menonita o parte apelada). Al así decidir, el foro primario determinó que Menonita despidió a la señora Rivera Luna, luego de haber transcurrido el término de seis (6) meses de reserva de empleo (*Short Term Disabiliy*, STD) que se había obligado a

---

[1] Notificada el 25 de octubre de 2023.

NÚMERO IDENTIFICADOR

SEN2024_____

observar, sin estar esta apta para ser reinstalada. Concluyó que por Menonita ser un patrono exento de las disposiciones de la Ley 139-1968, *infra*, podía conceder un plan privado de incapacidad temporal no ocupacional con un periodo de reserva de empleo más corto que el de doce (12) meses establecidos por el *Seguro por Incapacidad No Ocupacional Temporero*, (SINOD), según el estatuto citado.

Contrario a ello, la señora Rivera Luna nos plantea que Menonita estaba impedido de pactar un término más corto de reserva de empleo, por cuanto ello resultaba contrario a la política pública manifestada en la Ley 139-1968, infra. No nos persuade.

## I. Resumen del tracto procesal

El 7 de octubre de 2021, la señora Rivera Luna presentó una *Querella* ante el TPI alegando haber sido despedida de manera injustificada por su patrono, Menonita, por causa de discrimen por edad, represalias, y mientras estaba acogida y protegida por la reserva de empleo de doce (12) meses establecida por la Ley Núm. 139 de 1968, *infra*.

Por su parte, Menonita presentó *Contestación a Querella,* negando las alegaciones levantadas en su contra, y aseverando que el despido de la señora Rivera Luna fue por justa causa. Alzó como defensa ser un patrono exento de la Ley Núm. 139-1968, infra, y haber cesanteado a la apelante luego de transcurrido el periodo de seis (6) meses de reserva de empleo, sin que esta se pudiera reinstalar.

Posteriormente, Menonita presentó una *Solicitud de Sentencia Sumaria.* Allí enumeró treinta y seis (36) hechos, identificados como esenciales, pertinentes e incontrovertidos, con alusión a la prueba documental que los sostenían y que fue incluida como anejos. A renglón seguido, afirmó ser un patrono exento de la ley que regula SINOT, Ley 139-1968, según así se estableció mediante escrito del *Director del Negociado de Beneficios a Choferes y Personas con Incapacidad No*

*Ocupacional,* persona encargada por la referida legislación de hacer tal determinación. De conformidad con dicha exención, afirmó haber estado habilitado para ofrecer a sus empleados un programa privado de beneficios por incapacidad a corto plazo, con un periodo de reserva de empleo de seis (6) meses, como el que acordó con la apelante. A tenor con dicho plan, la cesantía de la apelante aconteció en una fecha posterior al término de reserva aludido, no estando esta apta para ser reinstalada, por tanto, mediando causa justificada.

En respuesta, la señora Rivera Luna instó *Oposición a Solicitud de Sentencia Sumaria.* Al atender la lista de hechos presuntamente incontrovertidos propuestos por el patrono, la apelante los admitió casi en su totalidad, limitándose a esgrimir argumentos de derecho sobre por qué no se debería dar paso a la desestimación solicitada. En específico, reiteró haber sido despedida injustificadamente, porque el patrono no podía acortar el término de reserva de empleo de doce (12) meses dispuestos por la Ley de SINOD, resultando tal acción contraria a la política pública expresada en dicho estatuto reparador. Por tanto, habiendo sido despedida antes del término de doce (12) años correspondientes a la Ley 139-1968, *infra.,* se debía considerar su despido como injustificado.

Examinadas las referidas mociones por el TPI, dicho foro ordenó a las partes a elaborar sus posiciones en cuanto a si Menonita estaba o no exenta de los requisitos impuestos a todo patrono por la Ley Núm. 139 de 1968, *infra,* y, en consecuencia, en posición de acortar el periodo sobre la reserva de empleo, de doce (12) a seis (6) meses.

En cumplimiento, la señora Rivera Luna presentó un escrito sobre la *Preeminencia de la Legislación Laboral sobre Contratos Privados,* mientras que Menonita instó *Réplica a Oposición a Solicitud de Sentencia Sumaria.*

Así las cosas, el TPI emitió el dictamen cuya revocación nos solicita la apelante, acogiendo la solicitud de sentencia sumaria instada por Menonita, desestimando la causa de acción presentada. En la *Sentencia* apelada, el foro primario acogió como incontrovertidos la mayoría de los hechos medulares propuestos por Menonita, advirtiendo que no habían sido controvertidos por la señora Rivera Luna. En específico, el TPI determinó que no existía controversia sobre los siguientes hechos esenciales y pertinentes:

1. Rivera comenzó a trabajar para el Hospital de Menonita en Aibonito el 24 de octubre de 1988 como Coordinadora de Servicios Clínicos.

2. El 10 de octubre de 2011 el Director del Negociado de Beneficios al Trabajador del Departamento del Trabajo y Recursos Humanos de Puerto Rico ("DTRH") emitió una Notificación de Determinación: Solicitud de Cancelación del Seguro Voluntario, en relación con la cuenta número 0714615009 del Hospital Menonita Cayey/Aibonito, a los siguientes efectos:

Recibimos su solicitud de cancelación del seguro voluntario. Ustedes como patrono exento tenían aprobada una solicitud de seguro voluntario de acuerdo con lo dispuesto en la Sección 7 (e) de la Ley de Beneficios por Incapacidad Temporal, Ley Núm. 139 del 26 de junio de 1968, según enmendada. [L]a misma fue efectiva el 1ro. de julio de 1982 y tenían un plan privado con Universal Life Insurance.

La Ley Núm. 139 (supra), en la sección 7(e)(2) establece:

(*2) Cualquier servicio que por motivo de una solicitud voluntaria hecha por una unidad de empleo bajo la Sección 7(e)(1) constituyere empleo bajo esta ley, cesará de ser tal empleo bajo esta ley a partir del 1ro de enero de cualquier año natural posterior a los dos años naturales de la solicitud voluntaria si a más tardar el <u>15 de marzo de dicho año dicha unidad de empleo hubiere presentado al Director un aviso escrito a ese respecto</u> o el Director, a iniciativa propia hubiere dado aviso de la terminación de dicho periodo de aplicación.*

Su solicitud de cancelación fue recibida el 4 de febrero del 2011. Luego de completar el proceso de evaluación, se ha determinado <u>cancelar el seguro voluntario, efectivo el 1reo [sic] de enero de 2011</u>, según establece la Sección de Ley antes citada. (Itálicas y subrayado en el original).

3. Menonita ofrece a sus empleados el beneficio de STD a través de la aseguradora privada AETNA.

4. El 21 de enero de 2011 Menonita envió a todos sus empleados una comunicación escrita que lee:

*Buenas Noticias*

Compañeros, a partir del 1ro de diciembre de 2010 las Pólizas de Seguro de Vida, LTD y STD las transferiremos a la compañía The Hartford.

Este cambio representa mejores tarifas y mayores Beneficios, ofreciéndonos la oportunidad de continuar brindándoles todos estos extraordinarios Beneficios libre de costo, donde nuestra Institución aporta el 100% de las tarifas.

El beneficio de Sinot lo estamos cambiando por STD (Short Term Disability) aumentando el pago máximo semanal a $150.00. Además, estamos cambiando la aportación del empleado a ce[r]o (0), nuestra Institución aportará el 10% de la tarifa.

El beneficio de LTD contempla los mismos beneficios con una tarifa menor. Nuestra Institución aporta el 100% de la tarifa.

El Seguro de Vida lo estamos aumentando a $30,000.00 muerte natural más $30,000.00 por muerte accidental. Nuestra Institución aporta el 100% de la tarifa.

Además, estamos extendiendo los beneficios de Major Medical, libre de costo, nuestra Institución aportará el 100% de la tarifa. (Itálicas en el original).

5. Rivera recibió la comunicación que Menonita envió a los empleados el 21 de enero de 2011 informando, entre otras cosas, que se estaba cambiando SINOT por el STD.

6. El 22 de abril de 2013 Rivera recibió copia del Manual del Empleado y de las Normas Generales de Conducta de Menonita, y se comprometió a leerlo, cumplir y atenerse a las políticas, normas, prácticas y reglas incluidas en el Manual.

7. El Manual del Empleado que recibió Rivera describe el Beneficio por Incapacidad a Corto Plazo (STD – 'Short Term Disability') que Menonita ofrece a sus empleados de la siguiente manera:

Todo empleado no importa lo saludable que esté, enfrenta la posibilidad de sufrir accidentes o enfermedades que puedan incapacitarlo temporeramente, ocasionar la pérdida de ingresos y en algunos casos hasta la muerte.

El Seguro por Incapacidad a Corto Plazo cubre a todos los empleados regulares a tiempo completo o que trabajen por lo menos treinta (30) horas semanales, en caso de enfermedades y/o accidentes que no estén relacionados con el empleo ni con accidentes de automóvil.

Este beneficio tiene un periodo de elegibilidad de noventa (90) días. El beneficio le proporciona ingresos semanales de hasta un máximo de $150.00 y cubre luego del octavo día consecutivo de la enfermedad o lesión.

El Hospital le reservará la posición durante un periodo de seis (6) meses mientras se encuentre acogido a este beneficio, siempre y cuando dicha posición exista.

El beneficio del Plan de Salud se le dejará hasta un máximo de un año, o hasta acogerse a los beneficios del Seguro Social, lo que surja primero, aunque la posición se haya declarado vacante. El Hospital paga el 100% de la póliza.

8. En el Manual del Empleado que recibió Rivera, Menonita adoptó una política prohibiendo el discrimen por edad y estableciendo que cuando un empleado "entiende que ha sido discriminado deberá informar inmediatamente a su supervisor y/o al gerente del departamento lo sucedido."

9. Menonita mantiene una política escrita de cero-tolerancia al discrimen por razón de edad.

10. El 12 de abril de 2018 Rivera suscribió la siguiente carta, dirigida a la Administradora del Hospital de Menonita en Aibonito, y recibida en Menonita el 16 de abril próximo:

Reciba un saludo especial!

Como es de su conocimiento relacionado al incidente ocurrido en su oficina el miércoles, 28 de febrero de 2018, en el cual tuve que recurrir a la sala de emergencia del hospital, y esto debido a una crisis emocional causada por un ambiente hostil que se ha ido arrastrando desde hace ya unos años atrás, específicamente, desde el 2012 donde tuve mi primera visita al Hospital Siquiátrico CIMA.

En estos momentos y debido a este ambiente, no me siento segura y emocionalmente no me encuentro bien ya que estoy recibiendo tratamiento de salud emocional en el Fondo del Seguro del Estado de Puerto Rico (FSE).

La joven Sra. Carmen L. Rodríguez, supervisora de Sala de Operaciones me está causando un ambiente hostil frente a personal y en este caso, frente a propagandista médico, al cual yo no estoy acostumbrada y mucho menos a tolerarle como falta de respeto. Esto me ha estado, como le indiqué anteriormente, afectando en estos momentos, por lo que llevo mucho tiempo trabajando en esta institución hospitalaria; y en la cual he ejercido un trabajo de excelencia. Por lo que no quiero pensar, por comentarios escuchados de otros empleados que no sea una excusa para sacar personas de mayor edad o de mucho tiempo laborando en este hospital. Y esto, me ponga a pensar sea una excusa para sacarme de mi área donde he dado el cien por ciento de mi labor cumpliendo ya casi 30 años.

Además, le escribo directamente a usted ya que en el Depto. de Recursos Humanos tienen conocimiento de lo sucedido, lo que ha estado sucediendo y con otros casos. Me siento verdaderamente, insegura con la directora de dicho departamento por el parentesco que tiene con la Sra. Carmen L. Rodríguez.

Además, que conste que en tiempos atrás, me he reunido también con el Sr. Alejandro López, Director del Departamento de Enfermería, pero nunca he tenido ninguna respuesta al respecto.

11. El 12 de abril de 2018, Rivera presentó una queja alegando que era víctima de un ambiente hostil, pero la investigación que se hizo reveló que lo alegado no era cierto, pues, entre otras cosas, la propia Rivera admitió que amaba su trabajo y que se sentía en un ambiente de mucho respeto en su área de trabajo.

12. El 18 de junio de 2018, Teresa Colón Rodríguez y Alejandro López Alvarado se reunieron con Rivera sobre la carta que la Demandante envió el 12 de abril de 2018. Teresa Colón Rodríguez era la Directora de Recursos Humanos de Menonita, y Alejandro López Alvarado el Director del Departamento de Enfermería.

13. Sobre la reunión que se celebró el 18 de junio de 2018 entre Rivera, Teresa Colón Rodríguez y Alejandro López Alvarado, se levantó una minuta que establece lo siguiente:

Presentes:
Sra. Elizabeth Rivera Luna (firmado)
Sr. Alejandro López Alvarado (firmado)
Sra. Teresa Colón Rodríguez (firmado)

Asunto discutido: Carta enviada por la Sra. Elizabeth Rivera Luna con fecha del 12 de abril de 2018.

La señora Colón le pregunta a la señora Rivera cómo se ha sentido en su departamento, a partir del 23 de abril de 2018, fecha en que se reincorporó, luego de estar fuera por Fondo del Seguro del Estado. Elizabeth expresa que se siente feliz porque ama su trabajo y le encantan lo que hace, además informa, que siente un ambiente de mucho respeto en su departamento.

La señora Colón le pregunta si le gustaría un cambio de puesto o departamento y la señora Rivera expresa que no es necesario ya que Dios tiene un propósito y ella se siente muy a gusto. La señora Colón le informa sobre el ambiente hostil al cual hace referencia en su carta y la señora Rivera expresa que al momento el ambiente es de respeto.

La señora Colón le pregunta sobre comentarios que ella informa en su carta, relacionados a sacar personas de mayor edad o de mucho tiempo laborando en el Hospital..... la señora Rivera expresa que no tiene nombre de personas, que solamente han sido comentarios de pasillo. La señora Colón

expresa que nosotros somos un patrono responsable y protegemos a todos los empleados, que se toma acción cuando los empleados no cumplen con las normas y políticas de nuestra Institución.

La señora Colón le informa que es importante continúe llevando a cabo sus funciones a cabalidad. Se acordó que Elizabeth nos informará sobre cualquier situación que ella considere fuera de lo normal.

No habiendo más asuntos que discutir se dio por terminada la reunión. Minuta tomada y transcrita por la Sra. Teresa Colón.

14. Mientras se estuvo reportando a trabajar durante el año 2018 y 2019, Rivera en todo momento pudo desempeñar las funciones y deberes de su puesto.

15. El 22 de enero de 2019 Menonita envió una comunicación a Rivera a los siguientes efectos:

Han pasado treinta años (30) desde que comenzaste a trabajar en nuestra Institución. Le damos gracias al Señor por permitirnos servir a nuestro pueblo y por permitirnos contar contigo para ofrecer los servicios que nuestra gente tanto necesita.

Queremos reconocer y honrar tu compromiso, dedicación y entrega en todos estos años de servicio. Por tal motivo el miércoles 30 de enero de 2019, a las 12:00 mediodía, en el Centro de CPR, haremos una pausa para rendirte un sencillo pero sincero homenaje. Eres nuestro/a invitado/a especial, contamos con tu asistencia.

Gracias por ser parte de nuestro Equipo de Trabajo.

16. Luego del 9 de abril de 2019, Rivera se excusó de presentarse a trabajar.

17. Rivera se excusó de presentarse a trabajar el 10 abril de 2019 porque no se sentía bien y procedió a llamar a la oficina de su psiquiatra.

18. Luego del 9 de abril de 2019, Rivera no regresó a trabajar en Menonita.

19. Luego del 9 de abril de 2019, como no estaba recibiendo ingresos y no estaba preparada para trabajar, Rivera se acogió al STD privado que Menonita ofrece a sus empleados a través de AETNA.

20. Mientras estuvo acogida al STD las tareas del puesto que ocupaba Rivera fueron distribuidas entre el personal que ya trabajaba para Menonita, pues se desconocía el tiempo en que Rivera estaría fuera de su puesto. Durante ese periodo de tiempo no se nombró a ninguna persona para ocupar el puesto de Rivera de forma permanente.

21. El 6 de mayo de 2019, Rivera firmó una Certificación en relación con el STD certificando lo siguiente:

Yo, Elizabeth Rivera Luna, certifico que me orientaron sobre el Beneficio del Seguro por Incapacidad a corto plazo 'Short Term Disability'. Me entregaron los formularios de Reclamación y me orientaron a que tan pronto el médico llene la parte que le corresponde y yo la mía, los traiga a la Oficina de Recursos Humanos para completar la parte del patrono y éstos enviarlos a la Compañía correspondiente.

Este beneficio tiene un periodo de elegibilidad de noventa (90) días. El beneficio le proporciona ingresos semanales de hasta un máximo de $150.00 y cubre luego del octavo día consecutivo de la enfermedad o lesión.

El Hospital le reservará la posición durante un periodo de seis (6) meses mientras se encuentra acogido a este beneficio, siempre y cuando dicha posición exista.

El beneficio del Plan de Salud se le dejará hasta un máximo de un año, o hasta acogerse a los beneficios del Seguro Social, lo que surja primero, aunque la posición se haya declarado vacante.

22. En julio o agosto de 2019 Rivera solicitó ser incapacitada por el Seguro Social Federal.

23. El 14 de octubre de 2019 Teresa Colón Rodríguez, Directora de Recursos Humanos de Menonita, suscribió una carta dirigida a Rivera que lee de la siguiente manera:

Estimada señora Rivera:

Según su expediente, el 10 de octubre de 2019, se cumplieron las 26 semanas de usted estar fuera bajo la reclamación del STD (Short Term Disability). Al momento de este comunicado usted no se ha reportado a trabajar, por tal motivo estamos declarando su puesto vacante.

Le exhorto a que pase por nuestro departamento de Recursos Humanos para orientarlo sobre la continuidad del Plan Médico. Debe entregar su tarjeta de Identificación, carta de ASUME y cualquier otro artículo que pertenezca a la Institución.

Deseamos su pronta recuperación y nos ponemos a su disposición si en algo podemos ayudarle.

24. Menonita entregó la carta de separación de empleo a Rivera el 17 de octubre de 2019, cuando Rivera todavía no estaba apta para reinstalarse en su puesto de trabajo.

25. Rivera fue cesanteada de su empleo en Menonita por haber expirado el periodo de reserva de empleo provisto en el beneficio STD que Menonita ofrece a sus empleados.

26. Menonita le reservó el empleo a Rivera durante el período de seis (6) meses desde que se comenzó a ausentar mientras estuvo acogida al STD conforme a lo establecido en el Manual de Empleados.

27. Luego que Menonita declaró vacante el puesto que ocupaba Rivera, se designó a Juan C. Pérez para ocupar el puesto que antes ocupaba Rivera.

28. Mientras Rivera estuvo acogida al STD, varias empleadas de Menonita desempeñaron las funciones de su puesto para resolver, pero fue luego de su cesantía que se designó a Juan C. Pérez para ocupar su puesto en forma permanente.

29. El 23 de octubre de 2019 el Seguro Social Federal aprobó la solicitud de incapacidad de Rivera y, desde ese momento, Rivera recibe un pago por incapacidad de dicha dependencia gubernamental federal.

30. Juan C. Pérez nació el 15 de mayo de 1964.

31. Juan C. Pérez tiene la misma edad que Rivera.

32. Marilyn Vélez y Shalimar Vázquez ocupan los puestos de Técnica de Sala de Operaciones.

33. Rivera entiende que su despido fue injustificado porque "estaba bajo una licencia médica y una licencia…de seguro AETNA" y no pensó que estando bajo el STD sería despedida.

34. Rivera entiende que su despido fue discriminatorio por razón de edad porque en algún momento pudieron haberle dado su plaza a Shalimar Vázquez o Marilyn Vélez.

35. Rivera entiende que su despido fue por represalias porque entiende que su despido pudo haber sido a causa de que a partir del año 2012 Carmen L. Rodríguez quería que hiciera tareas que no eran parte de sus funciones, tomaron en consideración ausencias justificadas y la suspendieron de empleo y sueldo por algo que no hizo.

Inconforme, la señora Rivera Luna acudió ante este Tribunal de Apelaciones, mediante recurso de *Apelación,* alzando el siguiente señalamiento de error:

Erró el TPI al determinar que un plan privado de beneficios por Incapacidad No Ocupacional puede ofrecer un periodo de reserva de empleo menor al que por ley establece el Gobierno de Puerto Rico.

A raíz de lo cual, Menonita presentó *Alegato en oposición.*

## II. Exposición de Derecho

### A. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

En lo pertinente, la Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, faculta a una parte que solicita un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Seguido, dicho mecanismo les permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020).

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* supra, pág. 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Como se sabe, en aras de prevalecer en una reclamación, la parte

promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

La parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR ___ (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.*, pág. 214.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más alto Foro señaló que:

[E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

## B. Ley de Beneficios por Incapacidad Temporal

El derecho de todo trabajador a la "protección contra riesgos para su salud o integridad personal en su trabajo o empleo" se encuentra consagrado en la Sección 16 del Artículo II de nuestra Constitución. A dichos efectos se aprobó la Ley Núm. 139 de 26 de junio de 1968, según enmendada, mejor conocida como la "Ley de Beneficios por Incapacidad Temporal", (Ley Núm. 139 o SINOT), 11 LPRA sec. 201 et seq. Esta ley establece un plan de beneficios por incapacidad temporera para sustituir la pérdida de salarios como consecuencia de incapacidad debido a enfermedad o a un accidente que no esté relacionado con el empleo.

El mismo estatuto establece un término durante el cual el patrono habrá de reservar el empleo a la persona que se encuentre bajo las instancias previstas en su articulado. En específico, conforme a la Sección 203(q) de la Ley Núm. 139, *supra,* el patrono vendrá obligado a reservar el empleo que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo sujeto a lo siguiente:

(1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha de comienzo de la incapacidad o seis (6) meses en el caso de patronos con quince (15) empleados o menos a la fecha de la incapacidad;

(2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono dicha reposición, y

(3) que dicho empleo subsista al momento en que el trabajador solicite su reposición. Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro trabajador. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro trabajador dentro de los treinta (30) días siguientes a la fecha en que se hizo el requerimiento de reposición.

Si el patrono no cumpliera con las disposiciones de este inciso, vendrá obligado a pagar al trabajador o a sus beneficiarios los salarios que dicho trabajador hubiere devengado de haber sido reinstalado; además le responderá de todos los daños y perjuicios que le haya ocasionado. El trabajador o sus beneficiarios podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32.

Sobre el mismo tema, en *Izagas Santos v. Family Drug Center*, 182 DPR 463, 477-478 (2011), el Tribunal Supremo sostuvo que:

*El objetivo de la reserva de empleo bajo SINOT es "garantizar al obrero que se incapacita temporalmente debido a una enfermedad o accidente no ocupacional, no sólo tranquilidad de espíritu y el sustento de él y de su familia por un tiempo determinado, sino el derecho a ser reinstalado". Aunque el trabajador esté inhabilitado para realizar sus funciones, la relación obrero-patronal sigue intacta mientras dure el periodo de reserva. Esta reserva de doce (12) meses comienza a transcurrir a partir del momento en que el obrero se inhabilite para trabajar y se trata de un plazo de caducidad. Además, como estatuto reparador, estamos obligados a interpretarlo liberalmente a favor del trabajador.*

Más adelante en la misma Opinión el Tribunal Supremo manifestó que:

*De la única manera en que un patrono puede despedir a un empleado durante el periodo de reserva es si media justa causa. Por otra parte, si el patrono lo despide sin justa causa antes de que venza el periodo de reserva, el empleado no tendrá que solicitar su reinstalación al finalizar el periodo de reserva para poder instar su acción de daños contra el patrono por haber violado la reserva. Hemos resuelto que esta reserva existe con total independencia de si en el futuro el obrero cualifica para ser reinstalado, e impide que el obrero sea despedido. Por eso, mientras la reserva esté vigente, no se puede despedir al empleado, aunque el empleado no cumpla con los requisitos establecidos en la ley para pedir la reinstalación. En otras palabras, no será justificación para despedir a un empleado durante el periodo de reserva el que*

> *éste no haya cumplido o que se prevea que no podrá cumplir con los requisitos de la reinstalación. De ser este el caso, el patrono tendrá que esperar a que se extinga el período de reserva, salvo que exista justa causa para el despido según la Ley Núm. 80.* Íd., págs.476-477.

Por otro lado, la Sección 205 la Ley Núm. 139, *supra,* reconoce y regula lo concerniente a la elección de los patronos de establecer planes privados para el mismo propósito que contempla este estatuto. En lo pertinente, sobre tal asunto se establece:

> (a) Derecho a establecer planes privados - un patrono podrá, con la autorización del Secretario, establecer un plan privado para pagar a sus empleados los beneficios por incapacidad provistos por este capítulo siempre que:
>
> (1) El Secretario considere que los beneficios del plan son en todo aspecto iguales o más favorables a los empleados de ese patrono que los beneficios provistos bajo la sec. 203 de este título;
>
> [...]
>
> 11 LPRA sec. 205

Esta legislación también dispuso que ciertas unidades de empleo estarían exentas de las disposiciones la Ley Núm. 139, según los casos especificados en la Sección 2(j)(6), 11 LPRA sec. 202.

Para determinar qué unidad de empleo calificará como exento, según el párrafo que precede, la Ley Núm. 139 depositó dicha facultad en la figura del *Director del Negociado de Beneficios a Chóferes y a Personas con Incapacidad No Ocupacional*, (el *Director*), funcionario cuya designación la realiza el Secretario del Departamento del Trabajo y Recursos Humanos. El *Director* podrá determinar qué patrono esté exento, "a base de sus conclusiones de hecho, bien a iniciativa propia o a solicitud de una unidad de empleo, o de uno o más de los empleados de ésta, si la unidad de empleo es un patrono y si el servicio prestado a la misma constituye empleo". Sección 7(a)(1) de la Ley Núm. 139. 11 LPRA sec. 207.

## III. Aplicación del Derecho

Encontrándose este foro intermedio en idéntica posición que el tribunal *a quo* al revisar una solicitud de sentencia sumaria, en tanto la revisión que acontece es *de novo*, nos corresponde como paso inicial auscultar la prueba documental que tuvo ante sí el TPI, según incluida en la petición dispositiva y su oposición, para verificar si persisten o no hechos materiales en controversia. Efectuado tal ejercicio, juzgamos, al igual que lo hizo el foro apelado, que no hay hechos esenciales en controversia, por lo que estamos contestes con cada una de las determinaciones de hechos enumeradas en la *Sentencia,* las cuales acogemos sin cambio alguno.

Sépase, en cualquier caso, que los asuntos alzados por la apelante ante nosotros refieren a temas de estricto derecho, y esta parte no exhibió pretensión alguna de controvertir los hechos adjudicados como incontrovertidos por el TPI[2]. En consecuencia, salvo por el hecho que resaltaremos en el próximo párrafo, no nos detendremos en consideraciones fácticas que ya fueron adjudicadas como incontrovertidas, y que no fueron objeto de impugnación en el recurso de apelación.

Dentro de los hechos medulares que no están en controversia resulta destacable que, el 10 de octubre de 2011, el *Director del Negociado de Beneficios al Trabajador del Departamento del Trabajo,* (el *Director*), emitió una *Notificación de Determinación: Solicitud de Cancelación del Seguro Voluntario*, con relación a la cuenta número 0714615009 del Hospital Menonita Cayey/Aibonito, a los siguientes efectos:

> Recibimos su solicitud de cancelación del seguro voluntario. **Ustedes como patrono exento** tenían aprobada una

---

[2] La apelante ha sido consistente en cuanto a este asunto, en la misma *Introducción* de su *Oposición a sentencia sumaria* manifestó que las razones que impedían la adjudicación sumaria en este caso respondían a consideraciones de derecho, (no de hecho). Apéndice del *recurso de apelación,* pág. 249.

solicitud de seguro voluntario de acuerdo con lo dispuesto en la Sección 7 (e) de la Ley de Beneficios por Incapacidad Temporal, Ley Núm. 139 del 26 de junio de 1968, según enmendada. la misma fue efectiva el 1ro. de julio de 1982 y tenían un plan privado con Universal Life Insurance.[3]

(Énfasis provisto).

Es decir, la prueba documental estableció como hecho incontrovertido que Menonita es un patrono exento para fines de la Ley Núm. 139, según así fue reconocido por el funcionario que la propia legislación reconoció para hacer tal determinación, el *Director.*

Entonces, atendiendo propiamente el señalamiento de error alzado por la señora Rivera Luna, esta sostiene que el TPI incidió al determinar que un plan privado de beneficios por incapacidad no ocupacional podía ofrecer un periodo de reserva de empleo menor al determinado por la Ley Núm. 139, *supra.* En consecuencia, asevera que su despido fue injustificado, en tanto el patrono no podía acortar el término de reserva de empleo de doce (12) meses dispuestos por la Ley de SINOD, pues tal acción resulta contraria a la política pública expresada en dicho estatuto reparador. En este contexto, la apelante sostiene que el patrono no puede negociar un término de reserva de empleo distinto al dispuesto la Ley Núm. 139, por prohibición de dicha ley.

Al abordar la argumentación del párrafo que precede, es de notar que el dictamen sumario apelado tuvo como razonamiento principal que Menonita es un patrono exento, por tanto, excluido de las disposiciones de la Ley Núm. 139. Sin embargo, en el recurso de apelación no se ahondó sobre las consecuencias que tal exención supone para este caso. De esta forma, si se parte del entendido de que el referido estatuto contempla presupuestos en los cuales no resulta de aplicación la reserva de empleo, delegando en la figura del *Director* una determinación sobre

---

[3] Véase, Apéndice III del recurso, pág. 19 y pág. 27 del Apéndice de la *Solicitud de Sentencia Sumaria, Notificación de Determinación: Solicitud de Cancelación del Seguro Voluntario.*

ello; ¿qué consecuencias le atribuye la apelante a la determinación administrativa por dicho *Director* de que un patrono está exento? Sobre ello, la apelante indicó que, *independientemente de la autorización del Secretario del Trabajo a la implementación del Patrono-Apelado de un plan privado con una reserva menor a la estatutaria, la realidad indiscutible es que ni las partes, ni ningún funcionario del Departamento del Trabajo, pueden soslayar el mandato claro de nuestro ordenamiento laboral*[4].

La contestación a la aseveración de la apelante antes citada es que, al examinar la letra de la Ley Núm. 139 surge un *mandato claro* en términos de establecer que algunos patronos estén exentos de sus disposiciones, cuando acontezcan las circunstancias que el propio estatuto prevé, y así sea declarado por el *Director.* Soslayar el mandato legislativo en este sentido realmente supondría desconocer que la Ley Núm. 139 identificó ciertos servicios prestados por una unidad de empleo, que fueron excluidos bajo la definición de empleo que ofrece la propia ley. 11 LPRA sec. 207(e)(1). Tampoco resulta de menor peso que la determinación administrativa hecha por el *Director*, respecto a la exención reconocida a Menonita, no fuera impugnada, ni el dictamen administrativo sujeto a revisión judicial, de modo que debemos atenernos a la deferencia debida a las resoluciones administrativas, máxime en un área dentro del *expertise* de la agencia.

Tal como lo apreció el foro apelado, una de las consecuencias de que Menonita esté exento de la aplicación de la Ley Núm. 139, *supra*, según así determinado por el funcionario a cargo de ello, el *Director*, es no estar atado por las obligaciones que esta legislación impone a los patronos en términos del tiempo en que tienen que reservar el empleo que desempeña el trabajador al momento de comenzar la incapacidad y de reinstalarlo. En consecuencia, en este caso Menonita no tenía que

---

[4] Recurso de apelación, pág. 10.

cumplir con el periodo de reserva de empleo por doce (12) meses, y podía establecer mediante acuerdo con la apelante un periodo de seis (6 meses), según lo hizo. No estando en controversia que la cesantía de la apelante ocurrió una vez transcurrido el periodo de reserva de seis meses que había acordado con Menonita, sin que estuviera apta para reinstalarse, se impone la conclusión de que medió causa justificada para la determinación tomada por la apelada.

**IV. Parte dispositiva**

Por las razones que anteceden, *Confirmamos* la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones