Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| MIREYA BACARDÍ GONZÁLEZ<br><br>Apelada<br><br>EX PARTE<br><br>JUAN MIGUEL SANTA CRUZ SIGARRETA<br><br>Causante<br><br>EMILIO SANTA CRUZ BACARDÍ<br><br>Apelante | KLAN202500207 | Apelación Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>K JV2015-1888<br><br>Sobre:<br>Cartas Testamentarias |
|---|---|---|

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

El 12 de marzo de este año, el Sr. Emilio Santa Cruz Bacardí, en adelante, el apelante) compareció ante este Tribunal de Apelaciones mediante *Apelación* y solicitó la revisión del Auto Definitivo notificado el 11 de diciembre de 2024, en el caso.[1]

Con el propósito de atender su reclamo, hemos examinado el expediente y leído la transcripción de la prueba oral vertida durante la vista evidenciaria celebrada en el caso los días 17 de julio de 2024 y 11 y 13 de septiembre del mismo año. Así hecho, y tras un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de las disposiciones legales y jurisprudenciales más adelante citadas, resolvemos **confirmar** la decisión apelada. Veamos.

---

[1] El apelante solicitó la reconsideración del dictamen emitido, así como la formulación de determinaciones de hechos adicionales. Mediante *Resolución* del 4 de febrero de 2025, notificada el día 10, ambas peticiones fueron denegadas.

Número Identificador

SEN2025 _____

**-I-**

La causa de acción de epígrafe fue objeto de una *Sentencia* emitida por este Tribunal de Apelaciones, con fecha del 15 de junio de 2018 en el recurso **KLCE201800255**. En aquella ocasión, el apelante solicitó la revisión judicial de cierta resolución dictada por el TPI mediante el cual se denegó su petición para que se le ordenara a la Sra. Mireya Bacardí González (en adelante, la apelada) cumplir con las disposiciones de la Ley de Procedimientos Legales Especiales, *infra,* y rindiera las cuentas finales de su gestión como albacea.[2] En la mencionada sentencia, y por las razones allí explicadas, este Tribunal de Apelaciones encontró que el TPI actuó correctamente al determinar que el cuaderno particional fue aceptado sin objeción del apelante.

Ahora bien, allí este Tribunal de Apelaciones estableció que, si bien la finalidad y firmeza del cuaderno particional era obvia, en virtud del Artículo 1032 del Código Civil de 1930,[3] no había impedimento alguno para que, de probarse que faltaban bienes por incluir en el caudal relicto, así se hiciera.  Así pues, y toda vez que la apelada no había rendido la cuenta final, en la *Sentencia* dictada en el caso KLCE201800255, se estableció que el TPI debía ordenar a la apelada a responder a varios escritos del apelante sobre las gestiones de administración que requirieron el manejo y desembolso de fondos y el pago de las cuentas del caudal bajo su control como tal albacea. Específicamente, el señalamiento sobre los bienes, las cuentas e intereses económicos que alegadamente faltaban por incluirse en el inventario y contabilizar como parte del caudal relicto. Por consiguiente, se resolvió que la apelada debía rendir su cuenta final con citación de los herederos, especificándose que debía dar especial atención a la información solicitada sobre los bienes que el apelante reclamaba debían adicionarse. Habiéndose

---

[2] Acogemos los antecedentes fácticos y procesales detallados en dicha sentencia.
[3] 31 LPRA Sec. 2917.

resuelto esto, el caso fue devuelto al TPI para la continuación de los procedimientos.

Ante lo resuelto por el Tribunal de Apelaciones, las partes realizaron descubrimiento de prueba sobre al asunto designado por el Tribunal de Apelaciones. Eventualmente, se celebró vista evidenciaria el 17 de julio de 2024 y la continuación de esta los días 11 y 13 de septiembre de 2024. En dicha audiencia, prestaron testimonio el CPA Fernando Carbonell, el Sr. José Bacardí González, la Sra. Josefina Bacardí González, la apelada, el Sr. Juan Santa Cruz Bacardí, Mireya Santa Cruz Bacardí y el apelante. [4]

Recibida y aquilatada la prueba, el 25 de noviembre de 2024, el TPI emitió *Auto Definitivo*. [5] El 11 de diciembre de 2024, el apelante sometió una *Solicitud de Determinaciones de Hechos y Derecho y Solicitud de Reconsideración*. La apelada se opuso a tal pedido. El 4 de febrero del año en curso, el foro primario denegó la solicitud de determinaciones de hechos y de derecho, así como reconsideración. Inconforme aun, el apelante instó el recurso de epígrafe[6] y alegó que el TPI se equivocó:

> […] al concluir en la resolución interlocutoria del 8 de marzo de 2023 y en el Auto Definitivo que el único activo sobre el cual había controversia eran los $941,454.43 depositados en la cuenta de Curtibe, S.A. a la muerte del Causante.
>
> […] en la apreciación de la prueba al concluir que la apelada refutó la presunción de gananacialidad de las acciones de Bacardí Limited que estaban a nombre de Curtibe, S.A.
>
> […] en la apreciación de la prueba al concluir que los $941,454.43 depositados en una cuenta bancaria a nombre de Inversiones Curtibe, S.A. en Panamá a la fecha del fallecimiento del Causante son privativos.
>
> […]al admitir como evidencia los exhibits 2, 4 y 5 de la apelada.

---

[4] Como evidencia documental de la apelada fueron admitidos los siguientes documentos: Informe Sucesión Juan Santa Cruz Sigarreta (Exhibit 1 de la apelada); comunicación del 3 de julio de 2006 (Exhibit 2 de la apelada); documento privado de donación del 25 de agosto de 2006 (Exihibit 3 de la apelada); correo electrónico del 22 de septiembre de 2006 (Exhibit 4 de la apelada) y comunicación del 3 de junio de 2006 con listado de documentos (Exhibit 5 de la apelada). Por su parte, y como prueba documental del apelante, se admitió el Informe preparado por el CPA Reynaldo Quiñones Márquez del 14 de abril de 2021 (Exhibit 1 del apelante) y Contrato de Fideicomiso (Exhibit 2 del apelante).

[5] El 11 de diciembre de 2024, el TPI notificó nuevamente el Auto Definitivo a los fines de terminar unas oraciones incompletas. Véase, pág. 1204 del Apéndice.

[6] Ese día, también sometió una *Moción con Arreglo a la Regla 70(D) del Reglamento del Tribunal de Apelaciones.*

[…] al no admitir como evidencia el documento titulado "Nominees as proposed by the Board" con fecha del 27 de junio de 2015.

[…] en la apreciación de la prueba al emitir el Auto Definitivo aprobando el Segundo Informe del CPA Carbonell como cuenta final obviando que surge patente que el CPA Carbonell no hizo el inventario de activos y pasivos acumulados por la Sociedad Legal de Gananciales del matrimonio entre la apelada y el causante ni dividió la comunidad post ganancial compuesta por la apelada y los herederos.

[…] en la apreciación de la prueba al emitir el Auto Definitivo aprobando el Segundo Informe del CPA Carbonell como cuenta final sin tomar en consideración las deficiencias de dicho Segundo Informe que fueron identificadas y fundamentadas por el CPA Reynaldo Quiñones en su informe.

[…] en la apreciación de la prueba al emitir el auto definitivo aprobando el segundo informe del CPA Carbonell como cuenta final obviando el grave error que consta en dicho informe de imputar a los herederos, incluyendo el apelante, la reducción de capital de una cuenta que le fue adjudicada a la Apelada.

[…] al no ordenar a la Apelada a contestar cabalmente las preguntas relacionadas con Curtibe, S.A. y las relacionadas con las supuestas donaciones y herencias de acciones de Bacardí Limited y/o Bacardí Corp. que recibió y con las cuales supuestamente se capitalizó a Curtibe, S.A.

Atendido el recurso, ordenamos a la parte apelada a comparecer y someter su postura. El 19 de marzo de este año, y dentro del plazo reglamentario para ello, el apelante compareció a acreditar el método de reproducción que utilizaría para atender los señalamientos de error que levantó sobre la apreciación de prueba. Al día siguiente, la apelada instó *Solicitud de Conversión de Recurso y Solicitud de Prórroga para Radicar Oposición a Recurso de Certiorari*. Mediante *Resolución* del 24 de marzo de 2025, además de autorizar la regrabación de los procedimientos, ordenamos la conversión del recurso a uno de *certiorari*.[7]

Luego de esto, y ante varias controversias surgidas en cuanto a la reproducción de la prueba oral, el 14 de mayo de 2025, emitimos *Resolución* mediante la que denegamos la petición de la apelada para que el caso procediera sin el beneficio de la exposición narrativa. Además, establecimos

---

[7] Sin embargo, el Artículo 590 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA Sec. 2514, establece que contra el auto definitivo se podrá interponer recurso de apelación, revertimos la conversión efectuada en el pleito y reinstalamos su condición de **apelación**.

los términos que regirían la presentación de la transcripción estipulada, el alegato suplementario y la postura de la apelada en cuanto al recurso. El 19 de mayo de este año, el apelante nos informó que las partes lograron estipular la transcripción de la regrabación de las vistas celebradas el 17 de julio de 2024 y el 13 de septiembre de 2024; más hubo impase en cuatro fragmentos en cuanto a la fecha del 11 de septiembre del mismo año.

Así las cosas, el 4 de junio de 2025, el apelante presentó su alegato suplementario. La apelada no compareció dentro del término que le concedimos para hacerlo, por lo que damos por sometido el asunto sin el beneficio de su comparecencia y procedemos a resolver las controversias planteadas por el apelante.

**-II-**

*A.*

Los administradores y albaceas deben presentar en el Tribunal de Primera Instancia cuentas trimestrales de las cantidades recibidas y desembolsadas. Estas, serán acompañadas de una declaración jurada y un resguardo en que conste el saldo en efecto que queda depositado en el establecimiento bancario designado por el tribunal.[8]

Cuando el albacea- o administrador- haya terminado la liquidación de los bienes, renuncie, sea separado o por cualquier otra cosa cese el desempeño de su cargo, deberá someter una cuenta final jurada y acompañada de los recibos y correspondientes resguardos. Al presentarse esta cuenta final, se citará a todas las partes interesadas en el caudal con el fin de que puedan presenciar la liquidación final de las cuentas.[9] Celebrada esta audiencia, se dictará auto definitivo aprobándose la cuenta o modificándola con cargo al albacea, pudiéndose interponer recurso de apelación contra dicho auto.[10]

---

[8] Art. 587 del Código de Enjuiciamiento Civil de 1933, 32 LPRA Sec. 2511.
[9] 32 LPA Sec. 2512.
[10] 32 LPRA Sec. 2514.

*B.*

En nuestra jurisdicción, se reputan gananciales todos los bienes del matrimonio. Así lo establece el Artículo 1307 del Código Civil de Puerto Rico de 1930, 31 LPRA Sec. 3647.[11] Ello será así, hasta que no se pruebe que pertenecen privativamente, al marido o la mujer. *Id.* Le corresponde pues al cónyuge que reclama que un bien le pertenece privativamente el destruir la presunción de gananciaidad. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884 (2016).

*C.*

Es norma hartamente conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en "la apreciación de la prueba", la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Peña Rivera v. Pacheco Caraballo, 213 DPR 1009, 1011 (2024) al citar a Ortiz Ortiz v. Medtronic, 209 DPR 759, 778 (2022) y otros.

Esta deferencia judicial, está predicada en que los jueces de las salas de instancias están en mejor posición de aquilatar la prueba testifical debido a que estos tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Íd.*, al mencionar a Ortiz Ortiz v. Medtronic, *supra* a la pág. 779, y otros. La deferencia debida a los foros primarios se extiende tanto a la adjudicación de credibilidad que éstos realizan sobre los testigos que declaran ante sí, como a las determinaciones de hechos que el juzgador de hechos realiza. Pueblo v. Negrón Ramírez, 213 DPR 895, 897 (2024), al citar a Pueblo v. Toro Martínez, 200 DPR 834, 836 (2018) y otros. Sin embargo, a modo de excepción, los foros apelativos estamos en las mismas condiciones

---

[11] Aunque la disposición legal citada fue derogada por la Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5311, *et seq.*, mejor conocida como el Código Civil de Puerto Rico 2020, en esta *Sentencia* se hace referencia al derogado Código Civil de 1930, debido a que los hechos ocurrieron previo a que entrara en vigor el actual código.

que el tribunal de instancia para intervenir y apreciar *de novo* la prueba documental que se haya presentado en un juicio. Id., al citar a Díaz García v. Aponte Aponte, 125 DPR 1, 3 (1989).

Es menester señalar que existe error manifiesto cuando el foro apelativo queda convencido de que existe un conflicto entre las conclusiones alcanzadas por el Tribunal de Primera Instancia y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. Entiéndase pues, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Peña Rivera v. Pacheco Caraballo, *supra* a la pág. 1012. Por su parte, el concepto de pasión, prejuicio y parcialidad han sido definido como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. Pueblo v. Negrón Ramírez, *supra*, al mencionar a Ortiz Ortiz v. Medtronic, *supra* y demás casos allí citados.

Aparte de lo arriba consignado, un foro apelativo puede intervenir con las determinaciones de hechos y la apreciación de la prueba si se demuestra que este incurrió en un abuso de discreción al apreciar y adjudicarla. A tales efectos, se incurre en abuso de discreción cuando el juez: "(1) ignora sin fundamento algún hecho material importante que no podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".

*D.*

En nuestro ordenamiento jurídico, como norma general, la evidencia pertinente es admisible. Sin embargo, cuando aplique alguna de las reglas

de exclusión reconocidas o aquellas dispuestas en la Regla 403 de Evidencia, pudiera excluirse evidencia pertinente. Izagas Santos v. Family Drug Center, 182 DPR 463, 466 (2011). La mencionada regla establece qué evidencia pertinente podrá ser excluida cuando su valor probatorio queda sustancialmente superado por el riesgo de causar perjuicio indebido, de causar confusión o de causar desorientación del Jurado; la dilación indebida de los procedimientos o una innecesaria presentación de prueba acumulativa.[12]

Si una parte entiende que el tribunal admitió erróneamente evidencia debe, conforme a la Regla 104 de Evidencia, presentar una objeción oportuna, específica y correcta. En caso de que se trate de una exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. Regla 104 de Evidencia, 32 LPRA Ap. VI R. 104.

Pese a lo antes dicho, los tribunales apelativos no revocarán una sentencia por admisión errónea de evidencia, a menos que el error haya sido, "un factor decisivo o sustancial en la sentencia emitida". Regla 105 de Evidencia, 32 LPRA Ap. VI R. 105. Así, si el error se considera benigno o no perjudicial- porque la exclusión de la evidencia no hubiese producido un resultado distinto- se confirma el dictamen a pesar del error. Pueblo v. Santiago Irizarry, 198 DPR 35, 36 (2017) al citar a Izagas Santos v. Family Drug Center, *supra*.

*E.*

La prueba de referencia es definida como "una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801 (C) de

---

[12] Regla 403 de Evidencia, 32 LPRA Ap. VI R. 403.

Evidencia, 32 LPRA Ap. VI, R. 801 (C). Como regla general, en nuestro ordenamiento jurídico toda prueba de referencia debe ser excluida.[13]

No obstante, la Regla 805 de Evidencia establece las instancias en las que vía excepción una declaración no estará sujeta a la regla general de exclusión de prueba de referencia.[14] De otro lado, la Regla 806 de Evidencia dispone que las declaraciones de un testigo que no está disponible en el juicio para ser confrontado serán admisibles. Para efectos de esta regla, el testigo no disponible es alguien que: (1) está exento de testificar debido a alguno de los privilegios reconocidos por las reglas evidenciarias; (2) insiste en no declarar, pese a que se le ha ordenado por el tribunal a así hacerlo; (3) no recuerda el asunto u objeto de su declaración; (4) al momento del juicio ha fallecido o se encuentra imposibilitada de comparecer por enfermedad o impedimento mental o físico; o (5) no compareció, a pesar de que quien le cita a declarar desplegó diligencia para procurar su comparecencia mediante citación del Tribunal.

En estas circunstancias, como excepción a la regla general de exclusión de prueba de referencia, será admisible lo siguiente: (1) testimonio anterior; (2) Declaración en peligro de muerte; (3) declaraciones contra interés; (4) declaraciones sobre historial personal o familiar.[15]

**-III-**

Para impugnar el Auto Definitivo emitido por el TPI, el apelante señaló la comisión de nueve (9) errores.[16] En el primero de estos, nos solicita la revisión judicial de la *Resolución y Orden* dictada en el pleito el 8 de marzo de 2023. Específicamente, cuando allí el foro primario manifiesta que "[e]n esencia, tanto el coheredero como la albacea coinciden en que el único

---

[13] Regla 804 de Evidencia, 32 LPRA Ap. VI, R. 804.
[14] Regla 805 de Evidencia, 32 LPRA Ap. VI, R. 805.
[15] Regla 806 (B), 32 LPRA Ap. VI R. 806(B)
[16] Debido a que varios de estos señalamientos pueden agruparse en una sola discusión, adelantamos que atenderemos y resolveremos los errores de una manera distinta a la que fueron presentados y discutidos por el apelante.

activo que está pendiente por adjudicar, es decir, sumar o no, al caudal relicto del causante en la cuenta en Curtibe.".

En cuanto a este dictamen, el apelante niega que sea correcto- como allí consignó el tribunal- que hubiera admitido o aceptado que la única controversia que estaba pendiente de dilucidarse era el dinero relacionado a Inversiones Curtibe. En contrario, discute que los distintos escritos que sometió durante el trámite del caso según relacionados en su recurso refutan lo aseverado por el foro primario. Añade que, dado que el Auto Definitivo recoge expresiones similares sobre la supuesta admisión, también debe ser revocado.

Como correctamente cita el apelante, la cuestión planteada en su primer señalamiento de error es una determinación interlocutoria que puede ser traída en apelación. No obstante, no encontramos razón alguna por la cual intervenir con la misma. Mucho menos para revocar el Auto Definitivo apelado bajo estos mismos argumentos.

A nuestro juicio, ninguno de los escritos citados por el apelante contiene una manifestación inequívoca- fuera de la sola mención en una de ellas de Saint John Properties- que derrote lo aseverado por el TPI en la *Resolución y Orden* del 8 de marzo de 2023. Es más, no escapa a nuestra atención que el apelante solicitó reconsideración de dicho dictamen, más al así hacerlo no solicitó que el tribunal corrigiera las aseveraciones que ante nos imputa incorrectas. Siendo ello así, dictaminamos que el primer error señalado no se cometió.

En cuanto al *Auto Definitivo* emitido, mediante el resto de los errores que señala, el apelante reclama que procede su revocación pues varios de los documentos admitidos como evidencia de la apelada eran inadmisibles. También afirma que el tribunal se equivocó al excluir como parte de su prueba cierto documento sometido en evidencia. A su vez, el apelante le imputa al foro primario error en la apreciación de la prueba y consecuente

emisión del Auto Definitivo. Por último, cataloga como error el no habérsele ordenado a la apelada a contestar ciertas preguntas relacionadas con las donaciones y herencias de Bacardí Limited y/o Bacardí Corp.

A continuación, atenderemos cada uno de estos planteamientos. Así, y con tal propósito, primeramente, consideraremos los cuestionamientos levantados por el apelante en cuanto a la admisión y exclusión errónea de evidencia.

Sobre la alegada admisión errónea de varios de los documentos sometidos como evidencia por la apelada, al discutir su cuarto señalamiento de error, el apelante argumenta que cada uno de estos pliegos fueron oportunamente objetados por no ser pertinentes, no haber sido autenticados y constituir prueba de referencia. Aduce que los documentos admitidos constituyen declaraciones escritas por declarantes que no eran los testigos y que estos se sometieron con el fin de probar la veracidad de su contenido. Expone que sin lugar a duda estos constituyen prueba de referencia inadmisible en nuestros tribunales. Añade también que la evidencia admitida debió excluirse debido ya que no fue debidamente autenticada.

A su vez, el apelante reclama que fue un error el excluir el documento titulado *Nominee as proposed by the Board* del 27 de junio de 2015, que intentó someter en evidencia. En síntesis, reclama que el foro primario debió admitir la prueba excluida por ser sorpresiva y considerar que, durante la argumentación que se expuso en defensa del documento, destacó que durante el trámite del pleito solicitó la celebración de una Conferencia con Antelación al Juicio y la preparación del correspondiente informe, pero que esta petición no fue concedida. Así pues, aduce que la negativa de conceder su reclamo ocasionó que no existiera un informe en el que se anunciara de antemano la prueba a utilizarse y causó la imputación de prueba no anunciada.

De igual forma, establece que, al no permitirse la preparación de un informe con antelación, desconocía cual sería la naturaleza de los testimonios y por consiguiente si el documento iba a ser utilizado. Empece a estos planteamientos, el apelante a la vez dice que el documento fue admitido de forma limitada para impugnar a la apelada al establecer que ambos, el causante y la Albacea, participaban de la elección de la Junta de Bacardí Limited, cosa que ella dijo no tenía derecho a hacer.

Los documentos admitidos como Exhibit 2, Exhibit 4 y Exhibit 5 de la apelada fueron los siguientes: una comunicación del 3 de julio de 2006 (Exhibit 2 de la apelada); un correo electrónico del 22 de septiembre de 2006 (Exhibit 4 de la apelada) y una comunicación del 3 de junio de 2006 con listado de documentos (Exhibit 5 de la apelada). Como bien señala el apelante, cuando la representación legal de la apelada solicitó la admisión de cada uno de estos documentos, el apelante levantó objeción a su admisibilidad bajo el argumento de que dicha prueba era prueba de referencia y por no haber sido adecuadamente autenticada. Es correcto que estos documentos fueron suscritos por terceras personas que no estuvieron disponibles como testigos para declarar sobre estos, por lo que como regla general constituyen prueba de referencia inadmisible.[17]

No obstante, nos parece que la evidencia admitida no fue un factor decisivo en la decisión o que, dada la totalidad de la prueba desfilada y adjudicada por el foro primario, el resultado alcanzado hubiera sido distinto, por lo que no dejaremos sin efecto la determinación de admisibilidad de los Exhibit 2, Exhibit 4 y Exhibit 5 de la apelada. Por la misma razón, tampoco dejaremos sin efecto la exclusión decretada en

---

[17] Sin embargo, entendemos que cada uno de los documentos admitidos fue debidamente autenticado. Ello así, ya que los declarantes identificaron la letra en manuscrito o la firma que de estos surgía como la de su madre, padre o hermanos, según aplicable a cada documento. Véase, testimonio del Sr. José Bacardí González, Transcripción de Vista del 7 de julio de 2024, pág. 184, línea 21 a la pág. 185, línea 8; la declaración de la Sra. Josefina Bacardí González, *Id.*, página 218, línea 4-8 y págs. 230. Línea 12 a la pág. 231, línea 2; y testimonio de la apelada, Vista del 11 de septiembre de 2024; págs. 32, línea 9-18.

cuanto al documento presentado en evidencia por el apelante, más no admitido. Veamos.

En el Auto Definitivo, particularmente al exponer su análisis, el TPI consignó lo que a continuación transcribimos:

> En lo que respecta a la naturaleza privativa o ganancial de la suma de $941,454.43 depositada en una cuenta bancaria a nombre de Inversiones Curtibe, S.A. en Panamá a la fecha del fallecimiento del Causante, la prueba desfilada demostró que dicha entidad fue creada por Josefina González, madre de Mireya Bacardí González para beneficio exclusivo de ésta. Luego de creada, se la entregó a Mireya Bacardí González. También demostró que los activos de dicha entidad consistían de acciones que fueron regaladas, donada o adquiridas a título gratuito de manos de su padre Emilio Bacardí Rosell. **Lo anterior demuestra que tanto Inversiones Curtibe, S.A. como las acciones corporativas de las cuales era dueña dicha entidad son de naturaleza privativa de Mireya Bacardí González por ser el producto de regalos, donaciones y/o herencia de su padre**.
>
> La prueba demostró que los dividendos generados por dichas acciones se depositaban en la cuenta bancaria a nombre de Inversiones Curtibe, S.A., la cual también se encontraba en un banco en Panamá. **Al momento del fallecimiento, en dicha cuenta había depositada la suma de $941, 454.43. Le evidencia demostró que dicha suma se encontraba en un banco en Panamá a nombre de Inversiones Curtibe, S.A. Es decir, no había sido repartida a Mireya Bacardí González**. Según expuesto previamente, sólo el beneficio repartido de las sociedades anónimas puede ser considerado como fruto. López Martínez v. Yordán, *supra*. Hay que destacar que la sociedad legal de gananciales se extinguió con el fallecimiento del Causante. Por tanto, cualquier dividendo declarado por Inversiones Curtibe, SA. Con posterioridad al fallecimiento del Causante, es propiedad privativa de Mireya Bacardí González.

En la audiencia sobre informe final celebrada en el caso, como prueba testifical de la apelada declararon: el CPA Fernando Carbonell, el Sr. José Bacardí González, la Sra. Josefina Bacardí González, el Sr. Juan Santa Cruz Bacardí, Mireya Santa Cruz Bacardí y la propia apelada. Conforme surgió de estos testimonios, Inversiones Curtibe, S.A. fue creada por los progenitores de la albacea a favor y nombre de la apelada con el propósito de que dicha entidad recibiera ciertas acciones de Bacardí Limited que el Sr. Emilio Bacardí Rosell, padre de la apelada, le regaló o donó en vida a título gratuito. Dicha donación, le consta tanto a la apelada como a sus hermanos declarantes, pues sus padres acostumbraban a

informarles verbalmente en reuniones familiares cuando regalos o donaciones así sucedían o iban a ocurrir.[18]

Como podemos apreciar, la prueba **testifical** que la apelada presentó durante la audiencia celebrada en el caso constituye evidencia de que el padre de esta era dueño de unas acciones de Bacardí Limited y que tales activos eran de él, por haberlos heredado. Igualmente, mediante las declaraciones de sus testigos, la apelada sometió prueba de que su papá le donó en vida parte de las acciones que tenía; que, para así hacer, transfirió sus acciones a la sociedad anónima Inversiones Curtibe, S.A.; y que dicha entidad se creó para la apelada con el fin de que allí se depositaran las acciones donadas.

Sabemos que la sola declaración de un testigo que le merezca credibilidad al juzgador o la juzgadora de hechos es suficiente en derecho para probar un hecho. Así lo establece la Regla 110 (D) de Evidencia, 32 LPRA Ap. VI. Por tanto, en consideración a lo que los testigos de la apelada declararon y la credibilidad que los mismos le merecieron al tribunal, nos parece que los documentos cuya admisión y exclusión impugna el apelante no fueron un factor decisivo en la decisión emitida. Tampoco, entendemos que, de haberse excluido la evidencia admitida, o haberse aceptado aquella que fue excluida o aprobada de forma limitada el resultado hubiera sido distinto. Por ello, las determinaciones impugnadas en los errores 4 y 5, no serán revocadas.

De hecho, hemos estudiado cuidadosamente el legajo apelativo. Asimismo, hemos dado una cuidadosa lectura a la transcripción de la prueba oral en consideración de los planteamientos traídos en apelación por el apelante. Realizado este ejercicio, no encontramos razón alguna para distanciarnos de la apreciación de prueba efectuada por el tribunal de

---

[18] Véase, testimonio del Sr. José Bacardí González, transcripción de vista del 7 de julio de 2024, págs. 158, línea10 a pág. 159, línea 20; testimonio de Josefina Bacardí González, *Id.,* a la págs. 218-225; y testimonio de Mireya Bacardí González, *Íd.*, págs. 276-277.

instancia refutada por el apelante en los señalamientos de error número 2, 3, 6, 7 y 8.

Allí, en su error número 2 el apelante afirma que debemos intervenir con la evaluación de la evidencia efectuada por el foro primario, pues en el caso no se presentó prueba **directa** de cómo se organizó Inversiones Curtibe, S.A., ni cómo las acciones de Bacardí Limited fueron transferidas a tal entidad. Asevera que la única prueba sometida por la albacea es mera evidencia **circunstancial** que debe verse con sospecha pues fue impugnado, por lo que ataca directamente el valor probatorio de su prueba. De la misma forma, al discutir su error número 3 plantea que, aun cuando se aceptara que las acciones donadas a la apelada eran privativas, la cantidad de $941,454.43 que se encontraban depositados a favor de la sociedad anónima eran gananciales, pues así se refutan los frutos civiles de los bienes privativos. Según el apelante, la prueba demostró que Inversiones Curtibe, S.A. era un alter ego de la albacea para recibir los dividendos y no una entidad real.

De otro lado, en la exposición incluida sobre sus errores número 6, 7 y 8 el apelante debate la aprobación del informe final sometido por el CPA Fernando Carbonell y aceptado por la albacea y los demás herederos. Así pues, expone que en el primer informe no se incluyó información sobre Inversiones Curtibe por lo que el inventario allí contenido estaba incompleto. Igualmente, señala que el reporte preparado por el CPA Fernando Carbonell contenía un sinnúmero de deficiencias y que estas fueron señaladas por su perito en el informe que preparó en el caso, el que fue admitido en evidencia. Por último, el apelante reclama que en el informe final sometido en el caso se les imputó a los herederos una pérdida capital sobre una cuenta que le fue adjudicada a la apelada. Ninguno de estos planteamientos nos convence.

Ya hemos mencionado que la norma de deferencia judicial que rige nuestro ordenamiento jurídico establece que los foros superiores no intervendrán con las determinaciones de hechos, ni las adjudicaciones de credibilidad realizadas por el TPI a menos que se haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. Las determinaciones de hechos formuladas en el Auto Definitivo apelado están sustentadas con prueba sustancial.

Los argumentos sometidos por el apelante están dirigidos a cuestionar el valor probatorio que a su entender debió asignársele a la prueba. Estos, sin embargo, nos parecen insuficientes para demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que nos veamos forzados a concluir que la determinación emitida en el Auto Definitivo no es razonable ante la totalidad de la prueba que el foro primario tuvo ante sí.[19]

El apelante falló en impugnar la determinación judicial de que los activos relacionados a Inversiones Curtibe, S.A., eran privativos de la albacea. Ni siquiera logró rebatir las expresiones del foro primario en cuanto a que al fallecimiento del causante la suma de $941,454.43 no había sido declarada o repartida, por lo que conforme al caso de López Martínez v. Yordán, 104 DPR 594 (1976), no había frutos gananciales que dividir entre la albacea y sus hijos, como herederos del causante. Tan es así, que el apelante ni siquiera atiende directamente las expresiones del tribunal limitándose a reclamar que Inversiones, S.A., era un alterego de la albacea.

Un estudio independiente de la prueba presentada ante el TPI no nos mueve a adoptar un criterio distinto al que adoptó. Tal como entendió el

---

[19] El apelante arguye en contrario y específicamente señala que su testimonio reforzó la gananciaidad alegada en cuanto a los activos de Inversiones Curtibe, S.A., ya que durante el mismo declaró que tenía conocimiento personal de que dicha entidad era de sus papas, que su papá administraba esa corporación y era él que hacía los desembolsos. Sin embargo, estimamos que sus declaraciones no tienen el efecto evidenciario que este supone al ser confrontadas con el resto de la prueba.

foro primario, nos parece que la albacea logró demostrar con certeza que recibió de su padre en donación ciertas acciones de Bacardí Limited, que con dicho propósito sus padres establecieron Inversiones Curtibe, S.A., que las acciones donadas son privativas y que, debido a que los dividendos de estas no habían sido repartidos al momento de la muerte del causante, no existían frutos civiles que beneficiaran a la Sociedad Legal de Gananciales, debiéndose adicionar en la cuenta final de la albacea. Por consiguiente, resolvemos que los errores 2, 3, 6, 7 y 8 que imputan falta al foro primario en la evaluación de la prueba no fueron cometidos.

Procedemos a atender el noveno y último señalamiento de error del apelante. Al discutir el mismo, en su alegato suplementario el apelante plantea como a continuación transcribimos:

> "Como se discutió en el señalamiento de error #6, el CPA Carbonell enmarañó en su informe el proceso de inventario y liquidación de la comunidad post ganancial con el proceso de inventario y liquidación del caudal relicto.
>
> Utilizando la excusa, incorrecta en derecho, de que lo que estaba pendiente era solo la discusión de la cuenta final, la Recurrida se negó a dar información en relación a los bienes acumulados durante el matrimonio. Con respecto decimos que el HTPI no fue firme en que [se] hicieran cumplir las reglas del descubrimiento de prueba. Incluso el HTPI fue laxo en hacer cumplir su propia orden que consta en la minuta de la vista de 23 de enero de 2020:
>
> Escuchadas las partes el Tribunal le concede a la licenciada Stipec ubio 15 días para que certifique quienes son los accionistas y los miembros de la Junta de Directores de Curtive (sic).
>
> Nunca entregó esa certificación la Recurrida."

La transcrita argumentación se sometió en el alegato suplementario como apoyo al alegado error cometido por el TPI al no ordenarle a la albacea a, "contestar cabalmente las preguntas relacionadas con Curtibe, S.A. y las relacionadas con las supuestas donaciones y herencias de acciones de Bacardí Limited y/o Bacardí Corp. que recibió y con las cuales supuestamente se capitalizó a Curtibe, S.A.". Mientras, y en cuanto a este mismo error, en su alegato de apelación manifestó que a la apelada se le

preguntó en cuanto a sus alegaciones de que la entidad fue capitalizada con donaciones y herencias recibidas y que esta objetó las preguntas al respecto. Luego de ello, el apelante hace referencia a varios escritos sometidos durante el trámite del caso.

Ni de lo que discute en su alegato original, ni de lo planteado en su alegato suplementario surge claramente a qué preguntas específicas se refiere el apelante, pues no hace referencia alguna. Tampoco sus planteamientos ubican claramente en tiempo sus argumentos. No nos queda claro si el apelante se refiere a preguntas efectuadas durante la audiencia o si, por el contrario, trata sobre situaciones acaecidas previo a la vista. Por consiguiente, no habiéndonos puesto en posición de entenderle, resolvemos que el noveno y último error del apelante tampoco fue cometido.[20]

-IV-

Por los fundamentos antes esbozados, confirmamos el Auto Definitivo apelado.

De igual forma, reinstalamos el recurso de epígrafe a su condición de *Apelación*, conforme el Artículo 590 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA Sec. 2514.

A su vez, ordenamos el desglose del apéndice para que le sea devuelto al apelante.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[20] Previo a concluir, estimamos meritorio señalar que al examinar los documentos que el apelante acompañó con su recurso advertimos que uno de los documentos contenidos en el Apéndice contiene información que como regla general debe ser tachada. Nos referimos al número de seguro social que surge del *Documento Privado-Donación*. Por ello, ordenamos el desglose del Apéndice para que le sea devuelto al apelante.